STANLEY E. WOODWARD, JR.
Associate Attorney General
BRETT A. SHUMATE
Assistant Attorney General
ABHISHEK KAMBLI
Deputy Associate Attorney General
Civil Division
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division
ELIANIS N. PÉREZ
Assistant Director
NICOLE GRANT
Senior Litigation Counsel
LUZ MARIA RESTREPO
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals Section

ERIC GRANT
United States Attorney
EDWARD A. OLSEN
Civil Chief, Assistant United States Attorney
Eastern District of California

*Attorneys for the United States*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| GAVIN NEWSOM, in his official capacity as ex officio member of the Board of Regents of the University of California and the Board of Trustees of the California State University; STATE OF CALIFORNIA; ROB BONTA, Attorney General for the State of California in his official capacity; REGENTS OF THE UNIVERSITY OF CALIFORNIA; BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; BOARD OF GOVERNORS OF THE CALIFORNIA COMMUNITY COLLEGES, | |
| Defendants. | |

1

1    Plaintiff, the United States of America, by and through its undersigned counsel, brings

2    this civil action for declaratory and injunctive relief, and alleges as follows:

3                                    **INTRODUCTION**

4    Federal law prohibits aliens illegally present in the United States from receiving in-state

5    tuition benefits that are denied to out-of-state U.S. citizens. *See* 8 U.S.C. § 1623(a). There are no

6    exceptions. Yet California Education Code ("Cal. Educ. Code") § 68130.5 extends eligibility for

7    in-state tuition benefits at state postsecondary educational institutions, including resident tuition,

8    scholarships, and subsidized loans, to illegal aliens, while requiring U.S. citizens from other states

9    to pay higher tuition rates. This unequal treatment is squarely prohibited and preempted by federal

10   law, which expressly provides that "an alien who is not lawfully present in the United States *shall*

11   *not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit

12   unless a citizen or national of the United States is eligible for such a benefit . . . without regard to

13   whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Cal. Educ.

14   Code § 68130.5 is thus unconstitutional under the Supremacy Clause of the U.S. Constitution, and

15   this Court should declare it illegal and permanently enjoin its enforcement.

16                            **JURISDICTION AND VENUE**

17   1.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

18   2.    Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because at least one

19   of the Defendants resides within the Eastern District of California and because Defendants' acts or

20   omissions giving rise to this Complaint arose from events occurring within this judicial district.

21   3.    The Court has the authority to provide the relief requested under the Supremacy

22   Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent

23   equitable powers.

24                                      **PARTIES**

25   4.    Plaintiff, the United States of America, regulates immigration under its

26   constitutional and statutory authorities, and it enforces federal immigration laws through its

27   Executive agencies, including the Department of Justice ("DOJ"), Department of Homeland

28   Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement

                                          2

(ICE), U.S. Citizenship and Immigration Services ("USCIS"), and U.S. Customs and Border Protection ("CBP").

5.      Defendant Gavin Newsom is sued in his official capacity as ex officio member of the Board for the Regents of the University of California ("UC Regents"), also named as a Defendant in this Complaint. Cal. Const. art. IX, § 9(a). As ex officio member of the Board for the UC Regents, Defendant Newsom generally has "full powers of organization and government" over the UC Regents. *Id.* Defendant Newsom is also charged with appointing eighteen members to the Board (with approval by the Senate and a majority of the membership concurring). *Id.* Additionally, Defendant Newsom has the following responsibilities: he is a trustee and fiduciary for the UC Regents; he is the President of the Board in an ex officio capacity; he is an ex officio member of each committee identified in the Bylaws; he is authorized to execute documents on behalf of the UC Regents; he sets out the policy and operational framework for the UC Regents as a Board member; he assists with fundraising, legislative advocacy, and other efforts on behalf of the UC Regents; as a member of the Board, he adopts procedures concerning breaches of conduct by Regent, Committee member, Regent-Designate or advisor to a Board Committee; and he is responsible for making various financial decisions impacting the University. University of California, Board of Regents, *Bylaws*, 21.1-.2, 21.9-.11, 23.2, 23.4, 24.4, https://regents.universityofcalifornia.edu/governance/bylaws/ (last visited Sept. 29, 2025); University of California, Board of Regents, *Regents Policies*, 1100, https://regents.universityofcalifornia.edu/governance/policies/ (last visited Sept. 29, 2025); University of California, Board of Regents, Standing Orders, 100.4, https://regents.universityofcalifornia.edu/governance/standing-orders/ (last visited Sept. 29, 2025).

6.      Defendant Newsom is also sued in his official capacity as ex officio member of the Board of Trustees of the California State University ("Trustees"), also named as a Defendant in this Complaint. Cal. Educ. Code § 66602(a). As ex officio member of the Board for the Trustees, Defendant Newsom is charged with appointing sixteen members to the Board subject to confirmation by two-thirds of the Senate. *Id.* Defendant Newsom is also responsible for the following, among other things: appointing two students to serve on the Board; and appointing a

3

faculty member from the California State University to serve on the Board. *Id.* at § 66602(b)(1), (c)(1).

7.      Defendant State of California is a state of the United States.

8.      Defendant Rob Bonta is the Attorney General for the State of California and has a general duty to enforce the laws of California. Cal. Const. art. V, § 13. Attorney General Bonta is sued in his official capacity.

9.      Defendant UC Regents is charged with governing the University of California system, a public trust created by Article 9, §  9 of the California State Constitution, and is charged with "full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university[.]" Cal. Const. art. IX, § 9. The UC Regents can adopt procedures concerning a student's classification as a resident or nonresident and facilitates student access to financial aid programs. *See generally* Cal. Educ. Code §§ 66021.6, 68040, 68044, 68051.

10.     Defendant Trustees is a state agency created by state statute and is responsible for administering and overseeing policies and programs offered within the California State University system as well as making in-state tuition accessible to qualifying students and helping students to gain access to postsecondary education, among other things. *See* Cal. Educ. Code §§ 66600, 66010, 66010.4, 66021.6, 68040, 68044, 68051, 89030, 89030.1.

11.     Defendant Board of Governors of the California Community Colleges ("CCC Board") is a state agency created by state statute and is charged with making financial aid programs as well as in-state tuition accessible to qualifying students and helping students to gain access to postsecondary education, among other things.  *See* Cal. Educ. Code §§ 66010, 66010.4, 66021.6, 68040, 68044, 68051, 70901, 70902, 71000, 71024.

**FEDERAL LAW**

12.     The Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1 and authorizes the President to "take Care that the

4

Laws be faithfully executed," U.S. Const. art. II, § 3.

13.     The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the Constitution, numerous acts of Congress, and binding Supreme Court precedent.

14.     Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

15.     On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[1] ordering federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]"

16.     On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[2] ordering relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]"

17.     These Orders emphasize that federal and state governments must not grant greater benefits to individuals who are unlawfully present in the United States than to American citizens. They also reflect Congress's intent—expressed in multiple provisions of the Immigration and Nationality Act ("INA")—to reduce incentives for illegal immigration by limiting access to certain public benefits.

18.     Specifically, in 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant

---

[1] Executive Order, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/ending-taxpayer-subsidization-of-open-borders/ (last visited Sept. 4, 2025).

[2] Executive Order, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/protecting-american-communities-from-criminal-aliens/ (last visited Sept. 4, 2025).

Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). A key objective of these Acts was to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for unlawful immigration. *See id.*; *see also* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

19.    Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

20.    Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B).

21.    Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

22.    As relevant here, PRWORA states: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

23.    Even in such cases, a state may not offer in-state tuition (or "resident tuition") benefits to individuals who are unlawfully present in the United States based on their residence in the state, if those same benefits are denied to U.S. citizens from other states. 8 U.S.C. § 1623. IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id*. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

24.    Accordingly, under 8 U.S.C. § 1623(a), individuals who are unlawfully present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are offered to all U.S. citizens, regardless of their state of residence.

### RELEVANT CALIFORNIA LAWS

25.    In 2001, the California legislature enacted Cal. Educ. Code § 68130.5, which unequivocally enables eligibility for resident tuition in an institution within the State System for illegal aliens if the alien: 1) attended a high school or a defined equivalent in California for three or more years, or alternatively, attained credits equivalent to three or more years at the same; 2) graduated from a California high school or attainment of a defined equivalent; 3) registered or enrolled in an institution within the state's postsecondary education system; and 4) filed  an affidavit with the institution of higher education stating that the student has filed an application to legalize his or her immigration status, or will file an application as soon as he or she is eligible to do so.  Cal. Educ. Code § 68130.5. Notably, students between the ages of 6 and 18 must attend a high school in the district "in which the residency of either the parent or legal guardian is located." Cal. Educ. Code § 48200.

26.    In 2014, the California Legislature passed Assembly Bill Number 2000 which expanded Section 68130.5 to cover residents that graduate early from a California high school before completing the 3-year attendance requirement, expanding the number of illegal aliens eligible for the exemption from nonresident tuition.[3]

27.    In 2022, the California Legislature passed Senate Bill Number 1141 amending Section 68130.5 to delete the provision that no more than two years at a California Community

---

[3] California Legislative Information, *AB-2000 Public postsecondary education: exemption from nonresident tuition (2013-2014)*, https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201320140AB2000&showamends=false (last visited Sept. 15, 2025).

College could count toward the 3-year attendance requirement, again, expanding the number of illegal aliens eligible for the exemption from nonresident tuition.[4]

28.    The provisions of Section 68130.5 were applicable to the University of California only if the UC Regents acted to make them applicable—which they have.[5]

29.    Each of the three governing boards, UC Regents, CCC Board, and Trustees, were required to adopt rules and regulations for determining a student's classification as a resident or nonresident, as well as procedures for review and appeal of that classification. *See* Cal. Educ. Code §§ 68040, 68044. They all adopted regulations and/or policies that allow illegal aliens to qualify for the exemption from nonresident tuition.

**UNIVERSITY OF CALIFORNIA REGENTS POLICY FOR DETERMINING IN-STATE/OUT-OF-STATE STATUS**

30.    Pursuant to Cal. Educ. Code § 68130.5, the UC Regents have adopted a policy that establishes criteria and guidelines for classifying postsecondary students as residents, nonresidents or Nonresident Supplemental Tuition ("NRST") Exempt for the purpose of assessing tuition rates.[6] The UC Regents set resident tuition rates significantly lower than nonresident tuition rates.[7]

31.    University of California postsecondary education institutions are responsible for determining students' in-state and out-of-state status consistent with the UC Regents' Policy.[8]

---

[4] California Legislative Information, *SB-1141 Public postsecondary education: exemption from payment of nonresident tuition.(2021-2022)*, https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202120220SB1141 (last visited Sept. 16, 2025).

[5] The Regents of the University of California, *Residency Policy*, UC Residence Policy and Guidelines 2024-25 Academic Year, https://www.ucop.edu/residency/files/rpg-2024-25-final.pdf.

[6] *See supra* n. 5.

[7] *See* University of California Admissions, *Tuition & cost of attendance*, https://admission.universityofcalifornia.edu/tuition-financial-aid/tuition-cost-of-attendance/ (last visited Sept. 4, 2025) (reflecting that estimated tuition amounts for residents in University of California system postsecondary educational institutions for the fiscal year 2026-2027 were significantly lower than they were for nonresidents).

[8] *See* University of California, Board of Regents, *Regents Policy 3105*, https://regents.universityofcalifornia.edu/governance/policies/3105.html (last visited Sept. 4, 2025).

32.     An individual seeking in-state status for purposes of assessing resident tuition bears the burden of proof.[9] The UC Regents requires its educational institutions to establish procedures for students to appeal out-of-state status classifications.[10]

33.     The UC Regents' Policy provides that a student who qualifies under the provisions of Cal. Educ. Code § 68130.5 is eligible for an NRST exemption classification. To obtain an NRST exempt classification, a student must provide the following: 1) proof of attendance at California high schools, adult schools or community colleges for three years (or proof of three years of California high school coursework completed in California and three years of total attendance in California elementary schools or elementary schools or a combination of both); 2) proof of graduation or attainment of an equivalent; and 3) an affidavit stating that the student meets all the requirements to qualify for Section 68130.5 status, and if present illegally, is in the process of adjusting his or her immigration status, or that the student will do so as soon as he or she is eligible.[11]

34.     Under the UC Regents' Policy, an illegal alien who meets the requirements of Cal. Educ. Code § 68130.5 is eligible to receive a waiver of nonresident tuition.

35.     Therefore, illegal aliens who satisfy the UC Regents' Policy criteria are eligible for reduced tuition benefits.

36.     Unless a student qualifies for a special circumstances resident classification or is otherwise exempt from payment of NRST, California charges U.S. citizens (and international students) a higher tuition than the rate offered to those who qualify for in-state tuition. *See* Cal. Educ. Code §§ 68070 – 68086, 68130.*5*.[12]

37.     This benefit is implemented through the UC Regents' Policy, which closely mirrors Section 68130.5.

38.     This treatment of illegal aliens stands in stark contrast to how the UC Regents' Policy treats U.S. citizens who do not meet the NRST exemptions or the special circumstances

---

[9] *See supra* n. 6.
[10] *See supra* n. 5 at *Residency Appeals*.
[11] *See supra* n. 5 at *Appendix D: AB 540 Nonresident Exemption – Requirements.*
[12] *See supra* n. 5.

resident classification.

**CALIFORNIA STATE UNIVERSITY TRUSTEES POLICY FOR DETERMINING IN-STATE/OUT-OF-STATE STATUS**

39.     Pursuant to Section 68130.5, the Trustees have adopted a policy that establishes criteria and guidelines for classifying postsecondary students as in-state or out-of-state students for the purpose of assessing tuition rates.[13] The Trustees set resident tuition rates significantly lower than nonresident tuition rates.[14]

40.     California State University postsecondary education institutions are responsible for determining students' in-state and out-of-state status consistent with the Trustees' Policy.[15]

41.     An individual seeking in-state status for purposes of assessing resident tuition bears the burden of proof.[16] The Trustees for the California State Universities sets forth the procedures for students to appeal out-of-state status classifications.[17] The Office of the Chancellor will either decide the appeal or send the matter back to the university for further review.[18]

42.     The Trustees' Policy provides that a student, including an illegal alien, who qualifies under the provisions of Cal. Educ. Code § 68130.5 is exempt from paying nonresident tuition.[19]

43.     This benefit is implemented through the Trustees' Policy, which closely mirrors its enabling California statute.

44.     Unless a student qualifies for a special circumstances resident classification or is otherwise exempt from payment of nonresident supplemental tuition, California State University charges U.S. citizens (and international students) a higher tuition than the rate offered to those who

---

[13] *See* CSU Mandatory Catalog Copy, *Determination of Residency for Tuition Purposes*, https://calstate.policystat.com/policy/17846723/latest/#autoid-r54b8 (last visited Sept. 4, 2025).
[14] *See* The California State University, *Current Tuition, 2025-26 Tuition*, https://www.calstate.edu/apply/paying-for-college/csu-costs/tuition-and-fees/Pages/basic-tuition-and-fees.aspx (last visited Sept. 4, 2025) (reflecting that tuition amounts for residents in University of California postsecondary educational institutions were significantly lower than they were for nonresidents).
[15] *See supra* n. 13.
[16] *See supra* n. 13 at *Requirements for Residency for Tuition Purposes*.
[17] *See supra* n. 13 at *Residency Appeals*.
[18] *See supra* n. 17.
[19] *See supra* n. 13 at *Fee Waivers and Exemptions*.

10

qualify for in-state tuition. *See* Cal. Educ. Code §§ 68070-68086, 68130.5.[20]

45.     This treatment of illegal aliens stands in stark contrast to how the Trustees treat U.S. citizens who cannot meet the NRST exemptions or the special circumstances resident classification.

**CALIFORNIA COMMUNITY COLLEGES BOARD OF GOVERNORS POLICY FOR DETERMINING IN-STATE/OUT-OF-STATE STATUS**

46.     The CCC Board has also adopted policies that establish criteria and guidelines for classifying post-secondary students as in-state or out-of-state students for the purpose of assessing tuition rates.[21] While each community college can set their own tuition rates, California Community Colleges can set resident tuition rates lower than nonresident tuition rates.[22]

47.     California Community Colleges are responsible for determining students' in-state and out-of-state status consistent with the CCC Board's Policy.[23]

48.     An individual seeking in-state status for purposes of assessing resident tuition bears the burden of proof.[24] There are established procedures for students attending California Community Colleges to appeal out-of-state status classifications. *See generally* Cal. Code Regs. Tit. 5, § 54060.

49.     The regulations governing California Community Colleges provide that a nonresident student, including illegal aliens, who qualify under the provisions of Cal. Educ. Code § 68130.5 are eligible for an exemption from payment of the California nonresident tuition. Cal.

---

[20] *See supra* n. 19.

[21] *See* California Community Colleges, *Residency for Tuition Purposes General Overview*, available at https://www.cccco.edu/-/media/CCCCO-Website/docs/general/2025residencyoverviewdocument42125finala11y.pdf?la=en&hash=8A1227B6F9DB6D13138B0AF0E3E5EA4EF198232D (last visited Sept. 4, 2025).

[22] *See*, *e.g.*, WOODLAND COMMUNITY COLLEGE, *Tuition and Fees*, https://wcc.yccd.edu/admissions/tuition-fees/ (last visited Sept. 5, 2025); FRESNO CITY COLLEGE, *Your Tuition, Fees and Other Costs Explained*, https://www.fresnocitycollege.edu/admissions-aid/business-office/cost-of-college.html (last visited Sept. 5, 2025).

[23] *See supra* n. 21 at 1-2.

[24] *See supra* n. 23; *see also* Cal. Code Regs. Tit. 5, §§ 54010, 54026.

Code Regs. Tit. 5, § 54045.5. The CCC Board's Policy reflects this as well.[25] To obtain the exemption, the student shall verify his or her eligibility by filing a California Nonresident Tuition Exemption Request form with the district of enrollment. Cal. Code Regs. Tit. 5, § 54045.5. For eligibility, a student must provide information demonstrating he or she meets the eligibility criteria in § 68130.5, and in the case of illegal aliens, an affidavit stating they are in the process of adjusting their immigration status, or that they will do so as soon as they are eligible. *Id.*

50.     Unless a student is otherwise exempt from payment of nonresident tuition,[26] California Community Colleges may charge U.S. citizens a higher tuition than the rate offered to those who qualify for in-state tuition.

51.     Therefore, under the CCC Board's Policy and California regulations, illegal aliens who will attend or are attending California Community Colleges and who satisfy the requirements under Cal. Educ. Code § 68130.5 are eligible for reduced tuition benefits in California, while U.S. citizens who do not meet the criteria are excluded from those benefits.

**THE CALIFORNIA DREAM ACTS**

52.     In 2011, the California legislature passed Assembly Bill Number 131 known as the "California Dream Act" amending Cal. Educ. Code § 66021.6 to "enable persons who are exempt from paying nonresident tuition under Section 68130.5, or who meet equivalent requirements adopted by the regents, to apply for, and participate in, all student aid programs administered by these segments to the full extent permitted by federal law."[27] Cal. Educ. Code § 66021.6(a). The "student aid programs" include non-state funded scholarships. *See* Cal. Educ. Code § 66021.7.

---

[25] *See supra* n. 21 at 26.
[26] *See, e.g.*, *supra* n. 21 at 20.
[27] California Legislative Information, *AB-131 Student financial aid (2011-2012)*, https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201120120AB131&showamends=false (last visited Sept. 14, 2025).

12

Because Sections 66021.6(a) and 66021.7 provide student aid benefits to the same group defined in Section 68130.5 which exempts illegal aliens from paying nonresident tuition, they also unlawfully make illegal aliens eligible for a benefit that is not similarly made available to U.S. citizens.

53.     In 2014, the California legislature passed Senate Bill Number 1210, also known as the "California DREAM Loan Act," which provides subsidized loans to illegal aliens that are exempt from paying nonresident tuition under Section 68130.5.[28] Cal. Educ. Code § 70033(a)(1). Interest will not accrue on these subsidized loans so long as the student is enrolled at least "half-time in a degree or certificate program." *Id.* § 70034(d). Again, this loan program is not available to U.S. citizens who are not exempt from nonresident tuition.

## THE CALIFORNIA PROVISIONS ARE PREEMPTED

54.     The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

55.     Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

56.     Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States

---

[28] California Legislative Information, *SB-1210 Postsecondary education: California DREAM Loan Program (2013-2014)*, https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201320140SB1210&showamends=false (last visited Sept. 15, 2025).

by enacting a statute containing an express preemption provision."); *United States v. 4,432 Mastercases of Cigarettes, More Or Less*, 448 F.3d 1168, 1189 (9th Cir. 2006) ("Express preemption occurs when Congress enacts a statute that expressly commands that state law on the particular subject is displaced." (citation omitted and internal quotation marks omitted)).

57.    "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with federal law are "without effect"); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same).

58.    When the federal statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted). Further, "the purpose of Congress is the ultimate touchstone in every preemption case." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 471 (9th Cir. 2007) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992))..

59.    Here, federal law, 8 U.S.C. § 1623(a), contains an express preemption clause as it directs that "[n]otwithstanding any other provision of law," an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

60.    As indicated by its title—'Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits'—Section 1623(a) mandates that all U.S. citizens must be eligible for a benefit regardless of residency before any

14

illegal alien can receive that benefit based on residency.

61.    At least three courts have found that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304, 312–13 (5th Cir. 2023); *see also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at \*3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

62.    Moreover, the United States District Court for the Northern District of Texas recently held that 8 U.S.C. § 1623(a) expressly preempted Texas Education Code §§ 54.051(m) and 54.052(a), which permitted illegal aliens to qualify for in-state tuition, even though out-of-state U.S. citizens were not afforded the same benefit. *See* Exhibit A (Order, *United States v. Texas*, No. 7:25-cv-00055-O (N.D. Tex. Jun. 4, 2025)). In so doing, the court found that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible." *Id.* at 8 (citation and internal citations omitted).

63.    Similarly, the United States District Court for the Eastern District of Oklahoma found that similar Oklahoma in-state tuition provisions "as applied to aliens who are not lawfully present in the United States, violate[] the Supremacy Clause and are unconstitutional and invalid." *See* Exhibit B at 1 (*United States v. Oklahoma*, No. 6:25-cv-00265-RAW-DES (E.D. Okla. Aug. 5, 2025), Order and Final Consent Judgment); *see also* Exhibit C (*United States v. Oklahoma*, No. 6:25-cv-00265-RAW-DES (E.D. Okla. Aug. 5, 2025), Report and Recommendation) (holding that

8 U.S.C. § 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria").

64.    Therefore, the federal statute, 8 U.S.C. § 1623(a), expressly preempts Cal. Educ. Code § 68130.5 because it bestows greater postsecondary education benefits on illegal aliens than on U.S. citizens. Cal. Educ. Code § 68130.5 is therefore unconstitutional. The fact that Section 68130.5 does not specify that a student must be a California resident in order to qualify for the exemption from paying out-of-state tuition does not change the analysis. First, Section 68130.5 requires that the student attend a California high school for three or more years; critically, however, the student has to be a California resident in order to attend a High School in California. *See* Cal. Educ. Code § 48200; *see also id.* at §§ 46600.1, 48204. Second, States and courts cannot do indirectly what they are barred from doing directly. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024); *see also California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1107 (9th Cir. 2024) ("As these cases make clear, States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*. EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings. So Berkeley can't evade preemption by merely moving up one step in the energy chain and banning natural gas piping within those buildings." (emphases in original)). Allocating lower tuition rates on the basis of high school attendance is a proxy for residence. *See* Exhibit A at 11 (holding that a similar Texas law which based residency on various factors including high school attendance did not place the challenged law "outside the purview of Section 1623(a)'s express preemption clause").[29]

---

[29] This is precisely why the California Supreme Court erred when it held in *Martinez v. Regents of University of California*, 241 P.3d 855, 863 (Cal. 2010), that 8 U.S.C. § 1623(a) did not preempt Cal. Educ. Code § 68130.5 because the latter statute does not exempt students from

65.    Because the California Dream and Dream Loan Acts provide scholarships and subsidized loans to illegal aliens that are not offered to U.S. citizens, Cal. Educ. Code §§ 66021.6, 66021.7, and 70033 are preempted for the same reasons that Cal. Educ. Code § 68130.5 is preempted. The California Dream Act "enable[s] persons who are exempt from paying nonresident tuition under Section 68130.5" to receive "student aid" benefits, including non-state funded scholarships. Cal. Educ. Code §§ 66021.6(a), 66021.7. Similarly, the California Dream Loan Act provides subsidized loans to illegal aliens that are exempt from paying nonresident tuition under Section 68130.5.[30] Cal. Educ. Code § 70033(a)(1). Since neither the scholarship nor the loan program is available to non-California resident U.S. citizens, both acts are preempted by Section 1623.

## DECLARATORY RELIEF ALLEGATIONS

66.    There is an actual controversy between the United States and Defendants with respect to the validity of the challenged provisions of California law.

67.    The United States asserts that the challenged provisions violate the Supremacy Clause and are therefore unconstitutional and invalid.

68.    Defendants, by contrast, assert that the challenged provisions are valid, and they intend to apply those provisions.

69.    Pursuant to 28 U.S.C. § 2201(a), this Court has the authority (and should exercise the authority) to declare the legal rights and obligations of the parties with respect to the challenged provisions and their application.

---

nonresident tuition on the basis of residence but instead on other factors, including attendance at a California high school for three years or more. The *Martinez* court's interpretation deprives Section 1623(a) of all meaning and this Court should reject it.

[30] California Legislative Information, *SB-1210 Postsecondary education: California DREAM Loan Program (2013-2014)*, https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201320140SB1210&showamends=false (last visited Sept. 15, 2025).

**CLAIMS FOR RELIEF**
**COUNT ONE**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION)**

70.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

71.    The challenged provision of the Cal. Educ. Code § 68130.5 violates federal immigration law. It directly conflicts with federal immigration law's prohibition on providing postsecondary education benefits (lower, resident tuition rates) based on residency to aliens not lawfully present in the United States that are not available to all U.S. citizens regardless of residency. 8 U.S.C. § 1623(a).

72.    Accordingly, the Court should find the challenged provision, Cal. Educ. Code § 68130.5, unconstitutional.

**COUNT TWO**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION)**

73.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

74.    The challenged provisions of the Cal. Educ. Code §§ 66021.6 and 66021.7 violate federal immigration law. They directly conflict with federal immigrations law's prohibition on providing postsecondary education benefits (scholarships) based on residency to illegal aliens that are not otherwise available to all U.S. citizens regardless of residency. 8 U.S.C. § 1623(a).

75.    Accordingly, the Court should find the challenged provisions, Cal. Educ. Code §§ 66021.6 and 66021.7, unconstitutional.

**COUNT THREE**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION)**

76.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

77.    The challenged provision of the Cal. Educ. Code § 70033 violates federal immigration law. It directly conflicts with federal immigration law's prohibition on providing

18

postsecondary education benefits (subsidized loans) based on residency to illegal aliens that are not otherwise available to all U.S. citizens regardless of residency. 8 U.S.C. § 1623(a).

78.     Accordingly, the Court should find the challenged provision, Cal. Educ. Code § 70033, unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

79.     That this Court enter a judgment declaring that the challenged provisions violate the Supremacy Clause and are therefore unconstitutional and invalid;

80.     That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing the challenged provisions;

81.     That this Court award the United States its costs and fees in this action; and

82.     That this Court award any other relief it deems just and proper.

DATED: November 20, 2025

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General

ABHISHEK S. KAMBLI
Deputy Associate Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

NICOLE P. GRANT
Senior Litigation Counsel

LUZ MARIA RESTREPO
Trial Attorney

Respectfully Submitted,

ERIC GRANT
United States Attorney

*/s/ Edward A. Olsen*
EDWARD A. OLSEN
Civil Chief, Assistant United States Attorney
Eastern District of California

*/s/ Elianis N. Perez*
ELIANIS N. PEREZ
Assistant Director
Email: Elianis.Perez@usdoj.gov
Attorney for the Plaintiff
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-9124
Fax: (202) 305-7000

*Attorneys for the United States*