STANLEY E. WOODWARD, JR.
Associate Attorney General
BRETT A. SHUMATE
Assistant Attorney General
ABHISHEK S. KAMBLI
Deputy Associate Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
NICOLE P. GRANT
Senior Litigation Counsel
ROBERT O. LINDEFJELD
Trial Attorney

ERIC GRANT
United States Attorney
EDWARD A. OLSEN
Civil Chief, Assistant United States
Attorney
Eastern District of California
ELIANIS N. PÉREZ
Assistant Director
Email: Elianis.Perez@usdoj.gov
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-9124
Fax: (202) 305-7000
*Attorneys for the United States*

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America | ) |
| | ) Case No.: 2:25-cv-03375-TLN-JDP |
| *Plaintiff,* | ) |
| | ) **Plaintiff's Opposition to Defendants'** |
| v. | ) **Motion to Dismiss** |
| | ) |
| GAVIN NEWSOM, in his official capacity | ) Date: February 5, 2026 |
| as ex officio member of the Board of | ) Time: 2:00 PM |
| Trustees of the California State University; | ) Courtroom: 2, 15th floor |
| STATE OF CALIFORNIA; ROB BONTA, | ) Judge Hon. Troy L. Nunley |
| Attorney General for the State of California | ) |
| in his official capacity; REGENTS OF THE | ) |
| UNIVERSITY OF CALIFORNIA; BOARD | ) |
| OF TRUSTEES OF THE CALIFORNIA | |
| STATE UNIVERSITY; BOARD OF | |
| GOVERNORS OF THE CALIFORNIA | |
| COMMUNITY COLLEGES, | |
| | |
| *Defendants.* | |

i

## **TABLE OF CONTENTS**

Contents

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ....................................................................................... 2

   A. Federal Law ....................................................................................... 2

   B. Relevant California Laws ................................................................... 3

   C. The UC Regents, CSU Trustees, and CCC Board's Policies for Determining In-State/Out-of-State Status Favor Illegal Aliens ......................................................... 4

   D. The California Dream Acts .................................................................. 6

III.    LEGAL STANDARD............................................................................... 7

IV.     ARGUMENT........................................................................................... 7

   A. The Defendants are Proper.................................................................. 7

   1.   The Ongoing Harm to Plaintiff Is Directly Traceable to California Governor Gavin Newsom and California Attorney General Rob Bonta ..................................... 8

   2.  This Court Should Redress the Ongoing Harm to Plaintiff by Enjoining Governor Gavin Newsom and Attorney General Rob Bonta From Continuing to Flout Federal Law ........ 11

   3.  The State Of California Is an Uncontested, Proper Party .................................. 12

   B. The California Provisions are Preempted ........................................... 13

   1.  California Law Makes Postsecondary Education Benefits Available "On the Basis of Residence." ...................................................................... 14

   2.   Because of where they reside, United States Citizens Are Ineligible for the Benefits that Resident Illegal Aliens Have Access to Under California Law..................................... 19

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Arizona v. United States,*
    567 U.S. 387 (2012) ........................................................................... 14

4

5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................ 8, 8

6

7

*California Restaurant Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024) ............................................................ 17

8

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) ............................................................. 8

9

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) ............................................................................. 9

10

11

*Digital Recognition Network, Inc. v. Hutchinson,*
    803 F.3d 952 (8th Cir. 2015) ............................................................... 9

12

13

*Doe v. Holcomb,*
    883 F.3d 971, 975096 (7th Cir. 2018) ................................................ 9

14

15

*Equal Access Educ. v. Merten,*
    305 F. Supp. 2d 585 (E.D. Va. 2004) ............................................... 20

16

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................................. 9

17

18

*Foss v. Ariz. Bd. of Regents,*
    No. 1 CA-CV 18-0781, 2019 WL 5801690 (Ariz. Ct. App. Nov. 7, 2019) ......................... 15

19

20

*Gunn v. Minton,*
    568 U.S. 251 (2013) ............................................................................. 7

21

*Johnson v. Riverside Healthcare Sys.,*
    534 F.3d 1116 (9th Cir. 2008) ............................................................. 8

22

23

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ......................................................................... 7-8

24

25

*Long v. Van de Kamp,*
    961 F.2d 151 (9th Cir. 1992) ...................................................... 10, 11

26

*Marceau v. Blackfeet Hous. Auth.,*
    540 F.3d 916 (9th Cir. 2008) ............................................................... 8

27

28

*Martinez v. Regents of University of California,*
    83 Cal.Rptr.3d 518 (2008) ................................................................ 18

*Mastercases of Cigarettes, More Or Less*,
    448 F.3d 1168 (9th Cir. 2006) ............................................................ 14

*Nat'l Rifle Ass'n of Am. v. Vullo*,
    602 U.S. 175 (2024) ............................................................................ 17

*Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*,
    461 U.S. 190 (1983) ............................................................................ 14

*Pennsylvania v. West Virginia*,
    262 U.S. 623 (1923) (per curiam) ...................................................... 13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .............................................................................. 9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ........................................................................ 2, 16

*U.S. v. Oregon*,
    913 F.2d 576 (9th Cir. 1990) .............................................................. 19

*United States v. Iowa*,
    126 F.4th 1334 (8th Cir. 2025) ........................................................... 12

*United States v. Louisiana*,
    340 U.S. 899 (1950) ............................................................................ 13

*United States v. Missouri*,
    114 F.4th 980 (8th Cir. 2024) ............................................................. 12

*United States v. Oklahoma*,
    No. 25-CV-265-RAW-DES, 2025 WL 2815662 (E.D. Okla., Aug. 7, 2025) ...................... 19

*United States v. Oklahoma*,
    No. CIV-25-265-RAW-DES, 2025 WL 2815660 (E.D. Okla., Aug. 29, 2025) ................... 19

*United States v. Texas*,
    340 U.S. 900 (1950) (Mem.) ............................................................... 13

*United States v. Texas*,
    No. 7:25-cv-00055, 2025 WL 1583869 (N.D. Tex., Jun. 4, 2025) .......................... 19

*United States v. Texas*,
    No. 7:25-CV-00055-O, 350 F.R.D. 74 (N.D. Tex., Aug. 15, 2025) ...................... 16, 18

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003) .......................................................... 20

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ............................................................. 7

*Windmill Health Products, LLC v. Sensa Products*,

No. C-15-0574 MMC, 2015 WL 6471180 (N.D. Cal., Oct. 27, 2015) ........................... 17-18

*Wyandotte Transp. Co. v. United States*,
    389 U.S. 191 (1967) ...................................................................... 12

## U.S. CONSTITUTION

U.S. Const. art. I, § 8, cl. 4 ......................................................................... 2

## FEDERAL STATUTES

8 U.S.C. § 1601 ......................................................................................... 3
8 U.S.C. § 1623 ............................................... 7, 2, 3, 7, 12, 14, 15, 17, 18, 19, 20, 21
8 U.S.C. § 1621 ......................................................................................... 7
8 U.S.C. § 1101 ....................................................................................... 16

## FEDERAL REGISTRAR

60 Fed. Reg. 7885 (Feb. 7, 1995) ............................................................... 2

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1) ............................................................................. 7
Fed. R. Civ. P. 12(b)(6) ............................................................................. 8
Fed. R. Civ. P. 12 ..................................................................................... 7

## STATE CONSTITUTION

Cal. Const. art. IX, § 9 ............................................................................. 11

## STATE STATUTES

Texas Education Code § 54.052 ............................................................... 18
Texas Education Code § 54.052 ............................................................... 18
California Education Code § 48200 ...................................................... 4, 16
California Education Code § 68130.5 ................ 4, 5, 6, 7, 9, 11, 14, 15, 17, 17, 19, 20, 21
California Education Code § 66021.6 .................................................. 14, 15
California Education Code § 66021.7 ....................................................... 14
California Education Code § 68040 ............................................................ 5
California Education Code § 68044 ............................................................ 5
California Education Code § 68130.5 ....................................................... 14
California Education Code § 66602 .......................................................... 11

California Education Code § 66603 ............................................................... 11

California Education Code § 70033 ............................................................ 7, 14

## STATE REGULATIONS

Cal. Code Regs. Tit. 4, § 2032 ................................................................... 16

Cal. Code Regs. Tit. 5, § 54045.5 ................................................................ 6

## I.    INTRODUCTION

Defendants' Motion to Dismiss attempts, through euphemisms and wordsmithing, to obscure the obvious: federal immigration law *expressly* preempts the challenged California Education Code. *See generally* ECF No. 14, Defs.' MTD. Specifically, federal law prohibits aliens illegally present in the United States from receiving in-state tuition benefits that are unavailable to out-of-state U.S. citizens when those benefits are afforded based on residence. 8 U.S.C. § 1623(a). There are no exceptions. Yet, the California laws challenged in this lawsuit extend eligibility for tuition benefits at state postsecondary educational institutions, including resident tuition, scholarships, and heavily subsidized loans, to illegal aliens while denying eligibility to U.S. citizens from other states. These laws are preempted. Styling such laws as "Education Access Laws" cannot avoid conflict with Section 1623 and only raises the question: Access for who? Answer: Illegal aliens that reside in California, to the detriment of United States citizens that live elsewhere.

Defendants' attempts to highlight exceptions wholly miss the point. Students who attend California high schools but live near the international border with California and Mexico, or state boundaries between California and Arizona, Nevada, or Oregon, do nothing to change the analysis of California law. California crafted a statute to essentially reflect residency without leaning on the word "resident." But "[t]he Constitution deals with substance, not shadows." and "what cannot be done directly cannot be done indirectly." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023). California law's proxy for residence falls within the sweep of Section 1623's prohibition. The facts of daily life in border towns cannot change that.

Congress has been very clear that this unequal treatment is squarely prohibited and preempted by federal law. And the individuals in California's education system undermining federal law are the Defendants Governor Gavin Newsom and Attorney General Rob Bonta, two named Defendants seeking to be excused from this case. This Court should not allow Governor Newsom and General Bonta and the California higher education system to brazenly flout clearly expressed federal law. As such, Plaintiff United States respectfully opposes Defendants' Motion to Dismiss.

## II.     BACKGROUND

### A.  Federal Law

The United States Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," *id.* at cl. 3. The Constitution also vests the President of the United States with "[t]he executive power," *id.* at art. II, § 1 and authorizes the President to "take Care that the Laws be faithfully executed," *id.* at art. II §3. With respect to immigration, the United States has well-established, preeminent, and preemptive authority to regulate such matters. This authority derives from the Constitution itself, numerous acts of Congress, and binding Supreme Court precedent. Based on its enumerated constitutional and inherent sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

Two of the more salient immigration laws were passed by Congress in 1996. In August of that year, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2268 (1996). This necessary immigration legislation sought to encourage self-sufficiency among immigrants in the United States, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for unlawful immigration. Recognizing that "[s]elf-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes," Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A). Congress further expressed that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

One month after PRWORA was passed, Congress also passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which further sought to disincentivize illegal immigration. *See* Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996); *see also* Memorandum for the Heads of Exec. Dep't on Deterring Illegal Immigration, 60 Fed. Reg. 7885 (Feb. 7, 1995). The straightforward and unambiguous provision under IIRIRA that is central to this case is Section 1623(a):

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State (or a political subdivision) for *any* postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a) (emphasis added). Section 1623(a)'s text clearly expresses Congress' express intent to prohibit illegal aliens from eligibility for postsecondary education benefits—such as in-state and free tuition—based on residence within a state unless United States citizens are eligible for the same, regardless of residency. There cannot be a clearer expression of congressional intent than the one expressed in this statute.

**B. Relevant California Laws**

In direct conflict with federal law is Section 68130.5 of the California Education Code, enacted in 2001.  This state statute unequivocally enables eligibility for resident tuition in an institution within the State System for illegal aliens if the aliens: (1) attended a high school or a defined equivalent in California for three or more years, or alternatively, attained credits equivalent to three or more years at the same; (2) graduated from a California high school or attainment of a defined equivalent; and (3) registered or enrolled in an institution of higher education stating that the student has filed an application to legalize his or her immigration status, or will file an application as soon as he or she is eligible to do so. Cal. Educ. Code § 68130.5. Notably, students between the ages of six and eighteen must attend a high school in the district "in which the residency of either the parent or legal guardian is located." *Id.* § 48200.

In 2014, the California Legislature expanded Section 68130.5 to cover residents graduating early from a California high school before completing the three-year attendance requirement, thereby further expanding the number of illegal aliens eligible for the exemption from non-resident tuition. Again, this was done in direct violation of federal law. California Legislative Information, *AB-2000 Public postsecondary education: exemption from non-resident tuition (2013)*, https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201320140AB2000&showamends=false (last visited Jan. 9, 2026).

In 2022, California expanded the number of illegal aliens eligible for non-resident tuition yet again, by deleting the provision in Section 68130.5 that allowed only two years at a California

Community College to count toward the three-year attendance requirement. California Legislative Information, SB-1141 Public postsecondary education: exemption from payment of non-resident tuition (2021-2022), https://leginfo.legislature.ca.gov/ faces/billNavClient.xhtml?bill_id=2021 20220SB1141 (last visited Jan. 9, 2026).

Defendant Gavin Newsom, as Governor of the State of California, signed this legislation into law on September 23, 2022. His office also issued a press release at the time, touting that "California is expanding opportunity for everyone, regardless of immigration status" by becoming a "a state of refuge." Press Release, Office of Governor Gavin Newsom, *California IDs For All*, (Sep. 23, 2022) (available at https://www.gov.ca.gov/2022/09/23/california-ids-for-all/ #:~:text=SB%201141%20 by%20Senator%20Monique,Last%20month%2C%20Governor%20 Newsom). But these actions in 2022, as now, were—and are—in direct conflict with federal law.

Of course, the California Legislature, Governor Newsom, and Attorney General Bonta cannot subvert federal law alone—California law requires that the governing boards of California higher education act in concert by adopting, subsequent to the Governor's newly signed law, policies and regulations to implement the provisions of the California Education Code as amended by the California Legislature and the Governor. Each of these governing boards—the University of California Board of Regents ("UC Regents"), the Board of Trustees of the California State University ("CSU Trustees"), and the Board of Governors of the California Community Colleges ("CCC Board")—adopted regulations and/or policies that allow illegal aliens to qualify for the exemption from non-resident tuition, as well as rules for determining a student's classification as a resident or non-resident and have set procedures for appeal of that classification. *See* Cal. Educ. Code §§ 68040, 68044.

### C. The UC Regents, CSU Trustees, and CCC Board's Policies for Determining In-State/Out-of-State Status Favor Illegal Aliens

Having received mandatory direction from the Governor and Legislature, each of the Defendants UC Regents, CSU Trustees, and CCC Board have adopted policies and regulations specifically targeted exempt from payment of California non-resident tuition to illegal aliens while denying such tuition exemptions to non-resident U.S. citizens. Just like the actions of the California Legislature, the Governor, and Attorney General, this is in direct contravention of federal law.

The UC Regents' Policy provides that a student who qualifies under the provisions of Cal. Educ. Code § 68130.5 is eligible for a Non-resident Supplemental Tuition ("NRST") exemption classification. To obtain an NRST exempt classification, a student must provide the following: (1) proof of attendance at California high schools, adult schools, or community colleges for three years (or proof of three years of California high school coursework completed in California and three years of total attendance in California elementary schools or California secondary schools or a combination of both); (2) proof of graduation from a California high school or attainment of the equivalent; and (3) an affidavit stating that the student meets all the requirements to qualify for Section 68130.5 status, and if present illegally, is in the process of adjusting his or her immigration status, or that the student will do so as soon as he or she is eligible. *See* The Regents of the University of California, *Residency Policy*, UC Residence Policy and Guidelines 2024-25 Academic Year (Appendix D), https://www.ucop.edu/residency/files/rpg-2024-25-final.pdf (last visited Jan. 10, 2026). Non-resident U.S. citizens do not qualify for such exemptions.

The CSU Trustees invoke a similar scheme to provide drastically reduced tuition for illegal aliens while not providing the same consideration for non-resident U.S. citizens. *See* CSU Mandatory Catalog Copy, *Determination of Residency for Tuition Purposes*, https://calstate.policystat.com/policy/ 17846723/latest/#autoid-r54b8 (last visited Jan. 10, 2026). Unless a student qualifies for a special circumstances resident classification or is otherwise exempt from payment of NRST, the CSU Trustees charge U.S. citizens (and international students) a higher tuition than the rate offered to those who qualify for in-state tuition. *See* Cal. Educ. Code §§ 68070-68086, 68130.5.

The regulations governing higher education controlled by the CCC Board similarly provide that non-resident students, including illegal aliens, who qualify under the provisions of Cal. Educ. Code § 68130.5 are eligible for an exemption from payment of California non-resident tuition. Cal. Code Regs. Tit. 5, § 54045.5. *See* California Community Colleges, Residency for Tuition Purposes General Overview (available at https://www.cccco.edu/-/media/CCCCO-Website/docs/ general/2025residencyoverviewdocument42125finala11y.pdf?la=en&hash=8A1227B6F9DB6D1 3138B0AF0E3E5EA4EF198232D (last visited Jan. 10, 2026). The CCC Board's Policy reflects this advantage for illegal aliens as well and requires that illegal aliens verify their eligibility by

filing a California Non-resident Tuition Exemption Request form with the district of enrollment. Cal. Code Regs. Tit. 5, § 54045.5. To be eligible, a student must provide information demonstrating he or she meets the eligibility criteria in Cal. Educ. Code § 68130.5, and in the case of illegal aliens, an affidavit stating they are in the process of adjusting their immigration status, or that they will do so as soon as they are eligible. *Id.*

**D. The California Dream Acts**

In 2011, the California Legislature passed Assembly Bill Number 131, known as the "California Dream Act", amending Cal. Educ. Code § 66021.6 to "enable persons who are exempt from paying non-resident tuition under Cal. Educ. Code § 68130.5, or who meet equivalent requirements adopted by the regents, to apply for, and participate in, all student aid programs administered by these segments to the full extent permitted by federal law." California Legislative Information, *AB-131 Student financial aid (2011-2012)*, https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201120120AB131&showamends=false (last visited Jan. 10, 2026). Recognizing that California is a state within the meaning of 8 U.S.C. § 1621 (demonstrating it was fully aware of the statute at issue in this case), the California Legislature proclaimed that "[t]he number of financial aid awards received by California resident students from financial aid programs administered by the segments shall not be diminished as a result of the application of subdivision (a)." *Id.* However, Section 1623 applies to U.S. citizens, not just "California resident students." Accordingly, the California Dream Act makes illegal aliens eligible for a benefit that is not similarly made available to U.S. citizens and thus directly conflict with federal law.

In 2014, the California Legislature passed Senate Bill Number 1210, also known as the "California DREAM Loan Act," which provides subsidized loans to illegal aliens that are exempt from paying non-resident tuition under Section 68130.5. *See* Cal. Educ. Code § 70033(a)(1); California Legislative Information, SB-1210 Postsecondary education: California DREAM Loan Program 2013-2014), https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201320140SB1210&showamends=false (last visited Jan. 10, 2026). Interest will not accrue on these subsidized loans so long as the student is enrolled at least "half-time in a degree or certificate program." Cal. Educ. Code § 70034(d). Again, this loan program is not available to U.S. citizens who are not exempt from non-resident tuition.

### III.    LEGAL STANDARD

A motion to dismiss filed under Rule 12(b)(1) challenges subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and lack the power to adjudicate claims absent jurisdiction conferred by the Constitution or by statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). The plaintiff bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Under Rule 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008). The Court need not, however, accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678.

### IV.    ARGUMENT

#### A. The Defendants are Proper

Defendants seek to dismiss Defendants California Governor Gavin Newsom and California Attorney General Rob Bonta on two grounds. First, Defendants allege that the harm sustained by the Federal Government is not traceable to these two defendants. Defs.' MTD at 7. Second, they allege that this Court cannot redress that harm by holding Governor Newsom and Attorney General Bonta accountable. *Id.* In moving to dismiss for lack of standing, Defendants make no distinction between Governor Newsom and Attorney General Bonta. Plaintiff agrees that these two defendants are one and the same for the purposes of this litigation. But both are proper parties to this litigation from whose actions, in part, result in injury to the United States.

Governor Newsom and Attorney General Bonta are active in the formation, shaping, and enforcement of California's education policies. They do this in at least three ways. *First*, they are deeply involved in the *creation* of state statutes in the legislative process well before the other Defendants are called upon to implement them (including signing the legislation into law). *Second*, they *coerce* the leaders of California's education system on an ongoing basis by threatening to withhold vital funding through the state budgetary process. And *third*, they further control the education agenda over the long term by appointing the majority of key leaders in California's education system. Governor Newsom and Attorney General Bonta are hardly passive players in setting the direction for California's higher education system—they are the central designers of it.

### 1. The Ongoing Harm to Plaintiff Is Directly Traceable to California Governor Gavin Newsom and California Attorney General Rob Bonta

The United States has standing to bring this suit against Governor Newsom and Attorney General Bonta. The doctrine of Article III standing stems from the U.S. Constitution's case-or-controversy limitation on judicial power. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). "Article III requires 'a causal connection' between the injury and the defendant's conduct[.]" *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (to have standing, a plaintiff must demonstrate a concrete injury in fact that is fairly traceable to the conduct of the party sued).

Under the California Constitution, "[t]he Governor shall see that the law is faithfully executed." Cal. Const. art. V, § 1. Likewise, it is "the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced." *Id.* § 3. Thus, the powers of Governor Newsom and Attorney General Bonta naturally extend to the power to enforce Cal. Educ. Code § 68130.5 and related policies and regulations.

In a case where, as here, a plaintiff sues a state official to enjoin enforcement of a state statute, the plaintiff must show that the state official plays "some role in enforcing" the challenged statute. *Doe v. Holcomb*, 883 F.3d 971, 975096 (7th Cir. 2018) (referencing *Ex parte Young*, 209 U.S. 123, 157 (1908) (holding that an officer of the state must have "some connection with the [challenged] act")). But Defendants' role in enforcing the challenged statutes need not be "declared in the same act which is to be [challenged]." *Ex parte Young*, 209 U.S. at 157. Rather, "[t]he fact

that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact" for determining standing. *Id.* If a duty to enforce a statute is not written on its face but "otherwise exist[s] it is equally efficacious." *Id.*

> It would seem to be clear that the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and power to enforce the statutes of the state, including, of course, the act in question, if it were constitutional.

*Id.* at 161. As in *Ex parte Young*, the California state officials who are the subject of this lawsuit— Governor Newsom and Attorney General Bonta—also have a general duty to enforce the laws of California. As such, their participation in this litigation is appropriate.

In support of their Motion to Dismiss, Defendants rely on a two-page, per-curiam opinion, *Long v. Van de Kamp*, 961 F.2d 151 (9th Cir. 1992) for the proposition that "general supervisory powers" are insufficient to establish the requisite connection with enforcement. Defs.' MTD at 8. However, in *Long*, the Court observed that "[t]he Attorney General ha[d] not in any way indicated that he intend[ed] to enforce [the statute at issue.]" *Id.* at 152. In fact, the Court went so far as to observe, "there [was] no indication that the Attorney General intend[ed] to pursue, or encourage local law enforcement agencies to pursue, such searches under [the challenged statute]." *Id.* The lack of enforcement in *Long* is the opposite to what we have in this case.

The Defendants' argument that the Governor and Attorney General have no interest or influence over California's higher education system is resoundingly hollow. For example, over the years, Governor Newsom (like his predecessors) has repeatedly used threats regarding state funding to impose his will on state higher education entities.[1] Contrary to Defendants' assertions

---

[1] *See, e.g.*, Smith, A. & Gordon, L., *Gov. Newsom proposes to make major investments in higher education*, EdSource (May 14, 2021) (available at https://edsource.org/2021/gov-newsom-to-make-major-investments-in-higher-ed/654709#:~:text=The%20UC%20regents%20in%20July,undocumented%20students%20and%20foster%20youth. (last visited Jan. 14, 2026) ("As he has done in the past, Newsom is demanding that UC and the CSU system not raise their in-state undergraduate tuition and fees for the 2021-22 school year."); M. Nietzel, *Governor Newsom Proposes Massive Funding Increases For California Universities And Colleges*, Forbes (Jan. 11, 2022) (available at https://www.forbes.com/sites/michaeltnietzel/2022/01/11/governor-newsom-proposes-massive-funding-increases-for-california-universities-and-colleges/ (last visited Jan. 14, 2026) ("Newsom's proposal comes with a catch: the institutions will need to make progress on a number of outcome priorities they've agreed to address over the coming years."). More recently, Governor Newsom exerted his power over California's higher education system to undermine federal law and thwart initiatives such as President Trump's proposed "Compact for Academic Excellence in Higher Education":

in seeking to dismiss Defendants Newsom and Bonta, these are hardly the words of disinterested government officials merely exercising supervisory authority over California's education system. As such, Defendants' reliance on *Long* is misplaced.

Moreover, Defendants' argument that Governor Newsom is just "one member of a 26-member voting board" with the Board of Regents of the University of California appears to suggest that Governor Newsom's role in the board is limited to occasionally attending board meetings to sample the coffee and donuts. Defs.' MTD at 9. Defendants make the same argument with respect to Governor Newsom being "one member of a 25-member voting board" with the California State University Board of Trustees. *Id.* However, what Defendants fail to point out is that Governor Newsom serves as the President of the Board of Regents (although the Chair runs the meetings) and has the power to appoint eighteen of its twenty-six board members to twelve-year terms. Cal. Const. art. IX, § 9. Regarding the Governor's appointment authority for the California State University, he similarly has the power to appoint sixteen of the CSU Trustees twenty-five board members to eight-year terms. Cal. Educ. Code §§ 66602, 66603. In this way, Governor Newsom not only has the ability to exert immediate control over Board decisions on a statewide basis, but he is also able to sustain a long-term impact on the direction of California's higher education system through his appointments of the majority of the members on these policy-making

---

IF ANY CALIFORNIA UNIVERSITY SIGNS THIS RADICAL AGREEMENT, THEY'LL LOSE BILLIONS IN STATE FUNDING — INCLUDING CAL GRANTS — INSTANTLY. CALIFORNIA WILL NOT BANKROLL SCHOOLS THAT SELL OUT THEIR STUDENTS, PROFESSORS, RESEARCHERS, AND SURRENDER ACADEMIC FREEDOM.

Press Release, Office of the Governor, *Governor Newsom: No state funding for sell-out universities* (Oct. 2, 2025) (available at https://www.gov.ca.gov/2025/10/02/governor-newsom-no-state-funding-for-sell-out-universities/) (last visited Jan. 11, 2026) (emphasis in original). Similarly, Attorney General Bonta issued the following statement about the Federal Government's immigration policies affecting California schools:

I know there is a lot of fear and anxiety around the incoming administration's anticipated changes to immigration policy, and I want to make sure students, their parents, and their teachers and school administrators are prepared. These new guidances [sic] highlight the educational rights of California students and the responsibility their schools have under state law to protect the rights and safety of all students in the state.

Press Release, Office of the Attorney General, *Attorney General Bonta Issues Guidance on Educational Rights of Immigrant Students and Their Families* (Jan. 5, 2025) (available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-issues-guidance-educational-rights-immigrant-students-and) (last visited Jan. 11, 2026).

educational boards for lengthy terms that exceed his own term as Governor. Governor Newsom is hardly just "one member" among many.

Additionally, the United States has suffered a concrete injury directly traceable to Cal. Educ. Code § 68130.5 (and the subsequent implementing policies and regulations promulgated by state education officials and the ongoing duty to enforce by Defendants Newsom and Bonta), because the statute interferes with the Federal Government's legally protected interest in enforcing 8 U.S.C. § 1623(a). *See United States v. Missouri*, 114 F.4th 980, 985 (8th Cir. 2024) ("Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States."); *see also Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) ("[T]he United States may sue to protect its interests.").

### 2. This Court Should Redress the Ongoing Harm to Plaintiff by Enjoining Governor Gavin Newsom and Attorney General Rob Bonta From Continuing to Flout Federal Law

The Federal Government's injury here is judicially redressable because invalidating and enjoining the enforcement of California's preempted statute, higher-education policies, and regulations would prevent interference with the Federal Government's legally protected interest in enforcing 8 U.S.C. § 1623(a). Again, Defendants Newsom and Bonta downplay their role with respect to enforcement of the challenged statute. Just as Plaintiffs injury is traceable to Defendants Newsom and Bonta, so too is that injury redressable by enjoining them. *See United States v. Iowa*, 126 F.4th 1334, 1343 (8th Cir. 2025) ("The injury to the United States is likely redressable by a favorable judicial decision, specifically, an injunction against enforcing the Act, which would prevent state officials from interfering with U.S. enforcement of federal immigration law.")

Governor Newsom has a long history of brazenly undermining federal immigration law. For example, in November 2016, following the election of Donald Trump, then-Lieutenant Governor Gavin Newsom famously sent letters to the leaders of California's public higher education systems imploring them to "codify practices, improve training, and formally declare campuses to be 'Sanctuary Campuses.'"[2] These efforts to thwart the enforcement of federal immigration law have landed California on the Department of Justice's Sanctuary Jurisdictions

---

[2]   *See* Letters From Gavin Newsom to President Napolitano, Chancellor White, and Interim Chancellor Skinner of the Univ. of Cal., Cal. State Univ., and Cal. Community Colleges (Nov. 17, 2016) (available at https://www.mercurynews.com/wp-content/uploads/2016/11/sanctuary.pdf).

List. *Justice Department Publishes List of Sanctuary Jurisdictions, U.S. Department of Justice Office of Public Affairs* (available at https://www.justice.gov/opa/pr/justice-department-publishes-list-sanctuary-jurisdictions (last visited Jan. 11, 2026). And the United States is suing the Governor for his most recent attempts to regulate federal immigration officers despite his full knowledge that such regulation of the federal government by states is unconstitutional.[3]

The argument that the Governor and the Attorney General play no role with respect to the challenged statutes is not credible—the Governor's administration has been consistently committed to his platform of thwarting federal law enforcement and assisting illegal aliens continued presence in California. Accordingly, Governor Newsom and Attorney General Bonta are proper Defendants to the United States' claims. For these reasons, the United States has Article III standing to assert the claims against them.[4]

### 3. The State Of California Is an Uncontested, Proper Party

Even if the Governor and Attorney General were dismissed from this action, Defendants do not dispute that the State of California is a proper Defendant, and any injunction issued against the State of California would fully redress the United States' injuries as to its claims against the challenged California statute and implementing policies and regulations. Thus, this Court could simply enjoin the State of California, its agents, officers, and employees, and all other persons and entities from taking any measures to enforce the challenged provisions, rendering moot Defendants' contentions about Article III standing. *See, e.g.*, *Pennsylvania v. West Virginia*, 262 U.S. 623, 624 (1923) (per curiam) (ordering "[t]hat the defendant state, and her several officers, agents and servants are hereby severally enjoined from enforcing, or attempting to enforce" an unconstitutional law); *United States v. Texas*, 340 U.S. 900 (1950) (Mem.) (enjoining "the State

---

[3] *See, e.g.*, Holden, L., *California lawmakers pass bill to ban ICE agents from wearing masks*, Politico (Sep. 11, 2025) (available at https://www.politico.com/news/2025/09/11/california-lawmakers-pass-bill-ban-ice-agents-wearing-masks-00559803 (quoting Governor Newsom as admitting, "It appears we don't have the legal authority for federal agents, but we do for other law enforcement authorities.").

[4] It is also worth noting that upon learning of this lawsuit by the U.S. Department of Justice, Governor Newsom's response was, "We'll see you in court." Weissman, S., *DOJ Sues California Over In-State Tuition for Undocumented Students*, Inside Higher Ed. (Nov. 24, 2025) (available at https://www.insidehighered.com/news/government/politics-elections/2025/11/24/doj-sues-california-over-state-tuition-noncitizens) (last visited Jan. 11, 2026). However, given this Motion to Dismiss, the Governor's bravado seems to have vanished. He now wants out entirely.

of Texas, its privies, assigns, lessees, and other persons claiming under it," from engaging in certain activities); *United States v. Louisiana*, 340 U.S. 899 (1950) (similar).

### B. The California Provisions are Preempted

The United States' Complaint more than adequately alleges a claim of express preemption. State law must give way to federal law when a federal statute contains an express preemption provision. *Arizona v. United States*, 567 U.S. 387, 399 (2012). Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983); *see also Mastercases of Cigarettes, More Or Less*, 448 F.3d 1168, 1189 (9th Cir. 2006). Federal law, specifically 8 U.S.C. § 1623(a), contains an express preemption clause as it directs that "[n]otwithstanding any other provision of law," an alien not lawfully present in the U.S. "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). As indicated by its title— "Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits"—Section 1623(a) mandates that U.S. citizens must be eligible for a benefit regardless of residency before any alien not lawfully present in the U.S. can receive that benefit based on residency.

In direct conflict with federal law, Sections 66021.6, 66021.7, 68130.5, and 70033 of the California Education Code permit illegal aliens to qualify for reduced tuition rates, scholarships, and subsidized loans based on residence within the state. At the same time, the laws deny these same postsecondary education benefits to U.S. citizens who do not meet the requirements for an exemption from nonresident tuition, or effectively, in-state tuition, outlined under Section 68130.5. Defendants attempt to avoid preemption by arguing that the challenged provisions do not make postsecondary education benefits available to illegal aliens based on residence, and that some nonresident United States citizens are eligible for these benefits. Defs.' MTD at 11-16. Common sense says otherwise. Under the challenged statutes, illegal aliens who reside in California are eligible for in-state tuition based on their residence, whereas most U.S. citizens residing outside of

California are ineligible because of where they reside. Hypothetical margin cases don't change that fact.

### 1. California Law Makes Postsecondary Education Benefits Available "On the Basis of Residence"

The challenged California statute ties eligibility for an exemption from nonresident tuition, or in-state tuition and free tuition, to a person's residence in California. Section 68130.5 of the California Education Code exempts students—including aliens not lawfully present in the U.S.—from having to pay the higher nonresident tuition if they meet certain requirements. Specifically, Section 68130.5 enables a person to be eligible for reduced resident tuition in an institution within the State System if the person (1) attended a high school or a defined equivalent in California for three or more years, or alternatively, attained credits equivalent to three or more years at the same; and (2) graduated from a California high school or attained of a defined equivalent. Cal. Educ. Code § 68130.5. This state statute is preempted by 8 U.S.C. § 1623(a), which prohibits illegal aliens from being eligible for any postsecondary education benefit, such as in-state tuition and free tuition, based on residence within the state unless a United States citizen is eligible for that benefit as well, regardless of residency. *See Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

Further, consistent with Section 68130.5, all three governing boards, the UC Regents, CSU Trustees, and CCC Board, adopted regulations and/or policies that allow aliens unlawfully present in the U.S. to qualify for the exemption from nonresident tuition consistent with California law. Because Sections 66021.6(a), 66021.7, 70033(a)(1) provide student aid benefits to the same group defined in Section 68130.5, which exempts aliens unlawfully present in the U.S. from paying nonresident tuition, they also unlawfully render aliens eligible for aid and scholarships consistent with Section 68130.5. There is no magic words requirement for a state law to run afoul of Section 1623. That Section 68130.5, related statutes, and the regulations implementing them do not announce themselves as having a residency requirement does not compel the conclusion that residency does not play the determinative role in the calculus.

While 8 U.S.C. § 1623(a) uses the specific term "residence," it reasonably encompasses requirements that are based on a student's status in the state that amounts to a residence requirement. California cannot avoid this reality by adding the additional requirement that the student attain a certain number of credits at a California high school.  Under the Immigration and Nationality Act ("INA"), Congress defines residence as "the place of general abode; the place of general abode of person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. §§ 1101(a)(33).[5] And students in California between the ages of 6 and 18 *must* attend a high school in the district "in which the residency of either the parent or legal guardian is located." Cal. Educ. Code § 48200. And a California resident is defined as: (a) A person registered to vote in California; (b) A person whose principal place of residence has been within the State of California for the preceding six consecutive months; (c) A person who has been physically present in California for ninety days or more and who intends to remain in California and to establish a principal place of residence in this State. [6] Cal. Code Regs. Tit. 4, § 2032. Students must attend a high school in the district where a parent resides. And a parent's residency is defined by physical presence and an intent to remain, or their principal place of residence. It follows that, by requiring students to attend high school where their parents reside and conferring eligibility for benefits based on high school attendance, California confers such eligibility based on residence.

Defendants allege that high school attendance "is neither equivalent to, nor dependent upon, California residency." Defs.' MTD at 12. But "'what cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows,' and the prohibition...is 'levelled at the thing, not the name.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023). And since California law requires high school students to attend the high school where they (or their parents) reside in California, eligibility based on attendance

---

[5] Contrary to Defendants' assertion, Defs.' MTD at 11, nothing in the INA's definition of "residence" means that Section 1623 only applies to "formal state residency"—whatever that means. The definition speaks for itself and the court should disregard defendants' inaccurate gloss.

[6] By Defendants' logic, Defs.' MTD at 11, this mismatch in definitions between the federal definition of "resident" and California's forecloses any preemptive effect of Section 1623 on the challenged provisions.  A one-to-one identity in defined terms is not required by the Constitution or preemption jurisprudence. *See United States v. Texas*, No. 7:25-CV-00055-O, 350 F.R.D. 74 (N.D. Tex., Aug. 15, 2025) (finding Sections 54.051(m) and 54.052(a) of the Texas Education Code are preempted by federal law notwithstanding Texas's definition of residency, which includes domicile, while the federal definition does not require intent to remain.)

at such high schools is nothing other than a residency requirement with credits and a diploma tacked on afterward. If California law merely required that a student attain so many credits at any high school in the United States in order to be eligible for nonresident tuition, then its law would not conflict with Section 1623. In that hypothetical, high school attendance would *not* be a proxy for residence because a student could reside in any state while completing the requisite credits in order to become eligible. Here, however, California has linked its compulsory high school attendance laws with residence and only grants eligibility to those students attending *California* high schools. As such, Section 68130.5 and its implementing policies and regulations are preempted under 8 U.S.C. § 1623(a) because they premise waivers of nonresident tuition and other forms of reduced tuition benefits on residence.

The fact that, as Defendants repeat often, nonresidents may attend California schools is irrelevant to the preemption analysis. Defs.' MTD at 1, 6, 12. Marginal exceptions notwithstanding, the challenged statutes premise eligibility on high school attendance which is premised *by California law* on residence. The fact that some nonresidents may become eligible for in-state tuition is precisely the problem. Other United States citizens are denied eligibility *with regard to their residence* in direct conflict with Section 1623 which demands that such benefits be conferred "*without* regard to whether the citizen … is such a resident." 8 U.S.C. § 1623(a). And states and courts cannot do indirectly what they are barred from doing directly. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024); *see also California Restaurant Ass'n v. City of Berkeley,* 89 F.4th 1094, 1107 (9th Cir. 2024) ("As these cases make clear, States and localities can't skirt the text of broad preemption provisions by doing indirectly what Congress says they can't do directly. EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings. So Berkeley can't evade preemption by merely moving up one step in the energy chain and banning natural gas piping within those buildings."). As such, despite the fact that *some* nonresidents may meet the statute's requirements, Section 68130.5 in law and in practical effect, requires residence in California.

Defendants' reliance on *Martinez v. Regents of the University of California* is neither binding nor persuasive. *See* 50 Cal. 4th 1277 (2010) *cert. denied*, 563 U.S. 1032 (2011). First, while the California Supreme Court has ruled on the question of whether Section 68130.5 is

preempted by the Constitution, federal courts should weigh in on the issue of federal constitutional law. "[T]he issue of whether a state statute is preempted by federal law is not an issue of state law, but, rather, one of federal law, *see Windmill Health Products, LLC v. Sensa Products*, No. C-15-0574 MMC, 2015 WL 6471180, at *3 (N.D. Cal., Oct. 27, 2015) *Citing Local Union 598 v. J.A. Jones Construction Co.,* 846 F.2d 1213, 1218 (9th Cir. 1988) (holding "preemption is a question of federal law"). Second, the court in *Martinez* erred in its interpretation of Section 68130.5, which does ultimately exempt illegal aliens "from paying out-of-state tuition" on the basis of residence. Section 68130.5 exempts illegal aliens from nonresident tuition—exactly what Section 1623(a) prohibits, only put negatively (as an exemption from nonresident tuition) rather than positively (as in-state tuition). The semantics have no legal impact: either way, illegal aliens are eligible for in-state tuition while non-resident U.S. citizens are not. As the California Court of Appeal, Third Appellate District cogently put it, when ruling on behalf of the Plaintiff and finding that California Education Code Section 68130.5 is preempted, "[a] reasonable person would assume that a person attending a California high school for three years also lives in California. Such an assumption would be reasonable, given that a school district is generally linked to residence." *Martinez v. Regents of University of California*, 83 Cal.Rptr.3d 518, 535 (2008).  Third, the *Martinez* court considered the California Legislative Counsel's opinion and legislative finding for their persuasive value regarding California Education Code Section 68130.5 but discounted legislative history of Title 8 of the United States Code Section 1623. *Martinez*, 50 Cal. 4th at 1289-90. This uneven treatment of extrinsic materials is unsound and not binding on this Court. This Court should interpret California Education Code Section 68130.5 independently based on its text and its practical effect: it bases eligibility for postsecondary education benefits on residence in the state, allowing illegal aliens to obtain benefits that U.S. citizens cannot.

Contrary to Defendants' misrepresentation that "no court has adopted Plaintiff's … reading" of Section 1623, multiple courts have done precisely that. In a case that dealt with a statute similar to the challenged California statutes, the court held that Texas Education Code Section 54.052, which allowed illegal aliens to qualify as Texas residents for the purpose of assessing lower tuition rates was preempted. *Texas*, No. 7:25-CV-00055-O, 350 F.R.D. 74. The now preempted statute only required a student to establish and maintain domicile continuously *or*

graduate from a public or private Texas high school or acquire the equivalent of a high school diploma and maintain a residence continuously for a set period of time. *See* Texas Education Code § 54.052(a). Texas did directly what California tries to do indirectly. While California Education Code Section 68130.5 does not explicitly reference domicile or residency requirements, it accomplishes the same result by its euphemistic wordsmithing.

While the court in *Texas* originally entered an order based on the parties' motion for consent judgment, *United States v. Texas*, No. 7:25-cv-00055, 2025 WL 1583869 (N.D. Tex., Jun. 4, 2025), the court later issued another order and opinion in response to proposed intervenor's attempt to disturb that judgment. There, the court held that intervention was legally futile because Section 1623 expressly "preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Texas*, 350 F.R.D. at 81. The court found it irrelevant that the challenged Texas law also "evaluates different factors to determine residency" such as high school attendance. *Id.* Intervenors in *Texas* have since sought a stay of the district court's injunction in the Fifth Circuit. That stay was denied in favor of the United States. *United States v. Texas*, No. 25-10898 (Order Denying Motion to Stay, Dkt. No. 114-1 (5th Cir. Oct. 16, 2026)).

The Northern District of Texas is not the only court to issue a reasoned opinion in support of its decision to enjoin a state law that runs afoul of Section 1623. The Eastern District of Oklahoma reached the same conclusion. *United States v. Oklahoma*, No. CIV-25-265-RAW-DES, 2025 WL 2815660 (E.D. Okla., Aug. 29, 2025). Adopting a report and recommendation of the magistrate judge, the court enjoined a state provision that based in-state tuition on residency and high school graduation criteria. *Id.*; *United States v. Oklahoma*, No. 25-CV-265-RAW-DES, 2025 WL 2815662 (E.D. Okla., Aug. 7, 2025). Again, Oklahoma tried to do directly—include an explicit residence requirement—what California attempts to do indirectly using high school attendance and graduation as a proxy for residence.

These cases are not rendered meaningless, as Defendants claim, merely because the parties moved for consent judgment. Defs.' MTD at 14. Rather, "[b]efore approving a consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and reasonable. In addition, because it is a form of judgment, a consent decree *must conform to applicable laws*." *U.S. v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (emphasis added). The United States has

successfully challenged state laws that contravene 8 U.S.C. § 1623(a), and this Court should find that Section 68130.5 and its implementing policies and regulations are preempted.

### 2. Because of Where They Reside, United States Citizens Are Ineligible for the Benefits that Resident Illegal Aliens Have Access to Under California Law

U.S. citizens are not afforded the same access to nonresident tuition waivers that illegal aliens residing in California are. But illegal aliens "shall not be eligible *on the basis of* residence within a State," where U.S. citizens are not. 8 U.S.C. § 1623(a). Individuals who fail to meet the criteria under California Education Code Section 68130.5 will not be classified as students eligible for exemptions from nonresident tuition. Cal. Educ. Code § 68130.5. Of these individuals, the overwhelming majority of U.S. citizens will not meet California's requirements and will not be eligible for the attendant postsecondary education benefit for which illegal alien residents of California are eligible. This is contrary to the purpose of 8 U.S.C. § 1623(a).

Under the challenged California provisions, there is no way that "*a citizen or national of the United States*" would be eligible for in-state tuition and free tuition "*without regard* to whether the citizen … is … a resident," 8 U.S.C. § 1623(a) (emphasis added), since such citizens are not eligible for an exemption from nonresident tuition under California law. Cal. Educ. Code § 68130.5. But illegal aliens who attend or graduate high school in California, and therefore establish residence in California, are eligible, despite the fact that the very purpose of Section 1623(a) is to preclude illegal aliens from establishing residence for the purpose of tuition benefits. This contravenes Congress's intent—expressed in multiple provisions of INA—to reduce incentives for illegal immigration by limiting access to certain public benefits. *See Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit").

Defendants argue that "all" and "a" have different meanings. Defs.' MTD at 15. However, it is a well-established rule of law that the use of the word "a" is an "indefinite or generalizing force." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003). And "without regard to" means "without attention paid to," in this case, the residence of U.S. citizens in determining their eligibility for in-state tuition when illegal aliens receive in-state tuition on the

basis of residence. Merriam-Webster.com Dictionary, s.v. "without regard to," (last visited Jan. 12, 2026), https://www.merriamwebster.com/dictionary/without%20regard%20to. So, the best reading of the statute is that if illegal aliens are eligible for tuition benefits on the basis of residency, then a U.S. citizen cannot be denied such eligibility with regard to their residence. California is allocating eligibility by *paying attention to* (i.e., *with* regard to) the residence of U.S. citizens. Forcing "a" U.S. citizen to meet California's residency requirements to be eligible for tuition benefits is precisely what is prohibited by Section 1623(a).

Defendants' argument that the challenged statutes do not run afoul of Section 1623(a) because "several categories of U.S. citizens are eligible under the Education Access Laws, despite never having been California residents" (Defs.' MTD at 15) is a red herring. The fact that a small number of U.S. citizens could conceivably qualify for California tuition benefits if they qualify for California's requirements for a nonresident tuition waiver is precisely the problem. The challenged statutes require any U.S. citizen to meet California's requirements, which ultimately turn on residence, in order to receive tuition benefits. Cal. Educ. Code § 68130.5. Plainly, California does "regard … whether the citizen … is such a resident." 8 U.S.C. § 1623(a).

Defendants' other arguments prove too much. Defendants emphasize that some students who "move out of California" meet the eligibility criteria for in-state tuition only establishes that Section 1623 preempts California law. Defs.' MTD at 1. To be eligible, by Defendants' own admission, the student had to, first, reside *in* California. This is still a benefit whose eligibility depends on residence, or in this case, *past* residence, in California. California cannot avoid the preemptive force of Section 1623 by appealing to former California residents who now reside elsewhere because eligibility is determined *with* regard to residence.

California cannot work around the Supremacy Clause through creative wordsmithing, suggesting that granting exemption from nonresident tuition boils down to something aside from residence when it does not. Where an illegal alien can establish residence and obtain tuition benefits, a U.S. citizen residing elsewhere should be eligible for the same tuition benefits.

## V.    CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss the complaint.

DATED: January 16, 2026                    Respectfully Submitted,


                                           STANLEY E. WOODWARD, JR.
                                           Associate Attorney General

                                           BRETT A. SHUMATE
                                           Assistant Attorney General

                                           ABHISHEK S. KAMBLI
                                           Deputy Associate Attorney General

                                           YAAKOV M. ROTH
                                           Principal Deputy Assistant Attorney General

                                           SEAN SKEDZIELEWSKI
                                           Counsel to the Assistant Attorney General

                                           NICOLE P. GRANT
                                           Senior Litigation Counsel

                                           ROBERT O. LINDEFJELD
                                           Trial Attorney

                                           Respectfully Submitted,

                                           ERIC GRANT
                                           United States Attorney

                                           EDWARD A. OLSEN
                                           Civil Chief, Assistant United States
                                           Attorney Eastern District of California

                                           */s/  Elianis  N. Perez*
                                           ELIANIS N. PÉREZ
                                           Assistant Director
                                           Email: Elianis.Perez@usdoj.gov
                                           United States Department of Justice
                                           Office of Immigration Litigation
                                           Civil Division
                                           P.O. Box 868, Ben Franklin Station
                                           Washington, D.C. 20044
                                           Telephone: (202) 598-7294
                                           Fax: (202) 305-7000

                                           *Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to the following attorney of record:

Nicholas Espiritu
Deputy Attorney General
1515 Clay Street
Oakland, CA 94612
Email: Nicholas.Espiritu@doj.ca.gov

Christopher Tenorio
California Department of Justice
Office of the Attorney General
600 W Broadway
Suite 1800
San Diego, CA 92101
619-321-5429
Email: christopher.tenorio@doj.ca.gov

Jennifer Soliman
Office of The Attorney General
300 S. Spring St.
Los Angeles, CA 90013
213-269-6596
Email: jennifer.soliman@doj.ca.gov

Joel Marrero
Office of The Attorney General

Civil Rights Enforcement Section
300 South Spring Street
Ste 7200
Los Angeles, CA 10005
213-655-8839
Email: joel.marrero@doj.ca.gov

Jose Pablo Galan DE LA Cruz
California Attorney General's Office
Health, Education, and Welfare
455 Golden Gate Ave
Ste 11000
San Francisco, CA 94102
415-510-3439
Fax: 415-703-5480
Email: pablo.galan@doj.ca.gov

Robin Lisa Goldfaden
Office of The Attorney General
455 Golden Gate Avenue
Suite 1100
San Francisco, CA 94102-7004
415-510-3543
Email: robin.goldfaden@doj.ca.gov

DATED: January 16, 2026

Respectfully submitted,

*/s/ Elianis N. Perez*
Elianis N. Perez
Assistant Director