ROB BONTA, State Bar No. 202668
Attorney General of California
MICHAEL L. NEWMAN, State Bar No. 222993
CHERYL L. FEINER, State Bar No. 170774
Senior Assistant Attorneys General
JOEL MARRERO, State Bar No. 275601
ROBIN L. GOLDFADEN, State Bar No. 208055
Supervising Deputy Attorneys General
CHRISTOPHER TENORIO, State Bar No. 166022
JOSÉ PABLO GALÁN DE LA CRUZ, State Bar No. 339970
JENNIFER SOLIMAN, State Bar No. 332519
NICHOLAS ESPÍRITU, State Bar No. 237665
Deputy Attorneys General
 1515 Clay Street
 Oakland, CA 94612
 Telephone: (510) 879-3908
 Fax: (916) 732-7920
 E-mail:  Nicholas.Espiritu@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No. 2:25-cv-03375-TLN-JDP |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF MOTION TO DISMISS** |
| **GAVIN NEWSOM, in his official capacity as ex officio member of the Board of Trustees of the California State University; STATE OF CALIFORNIA; ROB BONTA, Attorney General for the State of California in his official capacity; REGENTS OF THE UNIVERSITY OF CALIFORNIA; BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; BOARD OF GOVERNORS OF THE CALIFORNIA COMMUNITY COLLEGES,** | Judge: Hon. Troy L. Nunley<br>Action Filed: November 20, 2025 |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................................ 1

I.  Plaintiff lacks standing to sue the Governor or the Attorney General ................... 2

    A.  Plaintiff Fails to Allege Traceable Injury. ................................................... 2

        1.  A general duty to enforce state law is insufficient to establish traceability as to either the Governor or the Attorney General. ................................................................................ 2

        2.  Neither the Governor nor the Attorney General made credible threats to enforce the Education Access Laws. ................ 3

        3.  The Governor's appointment authority does not establish traceability. ............................................................................................ 4

    B.  Plaintiff Fails to Show that an Injunction Against the Governor or the Attorney General can Redress the Injuries it Alleges. ......................... 5

    C.  Given the Other Defendants that Plaintiff has Sued, the Governor and the Attorney General Are Redundant Defendants. .............................. 6

II.  Plaintiff's Express Preemption Claims Fail ............................................................... 6

    A.  "On the Basis of Residence" Under Section 1623(a) Has a Narrow, Defined Meaning. ........................................................................................... 6

    B.  Plaintiff Cites No Case Law that Supports Its Reading of Section 1623. ............................................................................................................... 9

Conclusion ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alabama v. North Carolina*
   560 U.S. 330 (2010) ................................................................................................... 8

*Artis v. District of Columbia*
   583 U.S. 71 (2018) ..................................................................................................... 8

*Bates v. United States*
   522 U.S. 23 (1997) ..................................................................................................... 8

*Berger v. N.C. State Conf. of the NAACP*
   597 U.S. 179 (2022) ................................................................................................... 9

*California v. Texas*
   593 U.S. 659 (2021) ............................................................................................... 4, 5

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*
   533 F.3d 780 (9th Cir. 2008) ..................................................................................... 6

*Equal Access Educ. v. Merten*
   305 F. Supp. 2d 585 (E.D. Va. 2004) ...................................................................... 10

*Gentry v. East West Partners Club Management Co. Inc.*
   816 F.3d 228 (4th Cir. 2016) ..................................................................................... 7

*Lunn v. City of Los Angeles*
   629 F. Supp. 3d 1007 (C.D. Cal. 2022) .................................................................... 6

*Martinez v. Regents of Univ. of California*
   50 Cal. 4th 1277 (2010) ..................................................................................... passim

*Matthews v. Apple, Inc.*
   769 F. Supp. 3d 999 (N.D. Cal. 2024) ...................................................................... 3

*Michigan v. Bay Mills Indian Cmty.*
   572 U.S. 782 (2014) ................................................................................................... 9

*Murray v. Mayo Clinic*
   934 F.3d 1101 (9th Cir. 2019) ................................................................................... 7

*Nat'l Audubon Soc'y, Inc. v. Davis*
   307 F.3d 835 (9th Cir. 2002) ..................................................................................... 3

*Planned Parenthood of Idaho, Inc. v. Wasden*
   376 F.3d 908 (9th Cir. 2004) ..................................................................................... 2

# TABLE OF AUTHORITIES
## (continued)

**Page**

*S. Pac. Transp. Co. v. Brown*
    651 F.2d 613 (9th Cir. 1980) ............................................................................................. 3

*Tedards v. Ducey*
    951 F.3d 1041 (9th Cir. 2020) ........................................................................................... 4

*United States v. Texas*
    350 F.R.D. 74 (N.D. Tex. 2025) ................................................................................... 9, 10

*Univ. of Tx. Sw. Med. Ctr. v. Nassar*
    570 U.S. 338 (2013) ........................................................................................................... 9

*Ex Parte Young*
    209 U.S. 123 (1908) ........................................................................................................... 2

**STATUTES**

8 U.S.C.
    § 1101(a)(33) ............................................................................................................ 1, 7, 8
    § 1623 ................................................................................................................... *passim*
    § 1623(a) .............................................................................................................. *passim*

Cal. Educ. Code
    § 48050 ............................................................................................................................. 8
    § 48051 ............................................................................................................................. 8
    § 48200 ............................................................................................................................. 8
    § 66021.6(a) ..................................................................................................................... 5
    § 66602(d)(2) ................................................................................................................... 5
    § 68130.5 .................................................................................................................... 6, 10

Tx. Educ. Code
    § 54.052(a) ..................................................................................................................... 10

**CONSTITUTIONAL PROVISIONS**

Cal. Const. Article IX, § 9(f) ................................................................................................... 5

## INTRODUCTION

The motion before the Court turns on a straightforward question of statutory interpretation. That question is whether California's "Education Access Laws,"[1] which provide for non-resident tuition waivers, grants, and loans based on educational attainment and prior schooling in California, comport with federal law limiting States in their provision of certain postsecondary education benefits based on residence. The answer to this question is that California's laws satisfy the terms of federal law. There is no express preemption.

The federal law involved here—specifically, 8 U.S.C. § 1623(a)—only purports to preempt state law if it grants postsecondary educational benefits to students without lawful presence "on the basis of residence"—in other words, based on a student's "principal, actual dwelling place." 8 U.S.C. § 1101(a)(33).[2] Eligibility for California's Education Access Laws is not "on the basis" of a student's "principal, actual dwelling place." All U.S. citizens and individuals who lack lawful presence are eligible, regardless of whether they have ever had a dwelling place in California, so long as they meet the statutory educational requirements. U.S. citizens and individuals who lack lawful presence who meet those requirements are eligible even though their principal, actual dwelling place is currently now in another state. The State's Education Access Laws thus "cannot be deemed to be based on residence for the simple reason that many *nonresidents* may qualify for it." *Martinez v. Regents of Univ. of California*, 50 Cal. 4th 1277, 1290 (2010) (emphasis in original). Because California's Education Access Laws do not conflict with federal law, Plaintiff's express preemption claims fail as a matter of law.

Plaintiff understands that its preemption argument is insupportable given Section 1623's plain and unambiguous language. For that reason, Plaintiff now urges the Court to redefine "residence" to include high school attendance and graduation—criteria that may correlate with

---

[1] As in the opening brief, for simplicity, Defendants use the term "Education Access Laws" as a shorthand for the three laws that Plaintiff challenges in this case. They can be discussed as one because they all employ the same eligibility criteria, as set forth in Defendants' opening brief. *See* Memorandum in Points and Authorities in Support of Defendants' Motion to Dismiss, Dkt. No. 14-1 (Mot.) at 3-5.

[2] Plaintiff concedes that 8 U.S.C. §§ 1101(a)(33) establishes Section 1623's definition of "residence." Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkt. No. 18 (Opp.) at 15.

past residence but can exist without regard to past or present residency and are not residence itself. No court has adopted Plaintiff's reading, and Section 1623 does not permit it. Plaintiff's wish that Congress had enacted a statute that would preempt the State's Education Access Laws does not make it so.

Plaintiff also fails to establish standing to sue Governor Newsom or Attorney General Bonta. Plaintiff alleges no injury traceable to either official, and there is no relief this Court could order against them that would redress Plaintiff's claims.

In sum, the Court should dismiss Plaintiff's complaint with prejudice, and in any event, the Court should dismiss Governor Newsom and Attorney General Bonta as defendants.

## I. PLAINTIFF LACKS STANDING TO SUE THE GOVERNOR OR THE ATTORNEY GENERAL.

### A. Plaintiff Fails to Allege Traceable Injury.

Plaintiff advances three theories of traceability, all of them flawed. First, Plaintiff asserts that the Governor and Attorney General possess general authority to enforce state law. Second, Plaintiff's Opposition seeks to portray certain unrelated statements by the Governor and the Attorney General as threats to enforce the Education Access Laws at issue in these proceedings. Finally, Plaintiff argues that the Governor's power to appoint a share of the board members of the UC Regents and CSU Trustees for set terms means he has the "ability to exert immediate control over Board decisions on a statewide basis." Opp. at 10. These theories do not establish traceability as to the Governor or the Attorney General.

#### 1. A general duty to enforce state law is insufficient to establish traceability as to either the Governor or the Attorney General.

Plaintiff contends its alleged injuries are directly traceable to Governor Newsom and Attorney General Bonta because both defendants have "a general duty to enforce the laws of California." Opp. at 9. Well-settled law, however, defeats this proposition.

For purposes of traceability, as well as under the sovereign-immunity principles of *Ex Parte Young*, 209 U.S. 123 (1908), "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing [a] challenged provision" is insufficient to sustain an action against a defendant state official. *Planned Parenthood of Idaho, Inc. v. Wasden*,

376 F.3d 908, 919 (9th Cir. 2004) (citation modified). This rule applies equally to governors and attorneys general. *See, e.g.*, *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002) (action against the governor was barred where he did not have the "requisite enforcement connection" to a challenged state statute); *S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 614–15 (9th Cir. 1980) (attorney general's "connection with enforcement" was insufficient to establish traceability). Here, the Complaint alleges no specific enforcement role for either the Governor or the Attorney General with respect to the Education Access Laws, and that alone defeats standing.

### 2. Neither the Governor nor the Attorney General made credible threats to enforce the Education Access Laws.

In its Opposition, Plaintiff attempts to cure its pleading defects by citing to news articles and press statements purportedly showing the Governor has "repeatedly used threats regarding state funding to impose his will on state higher education entities." Opp. at 9-10. Plaintiff also points to a statement by the Attorney General regarding the "educational rights of California students" in support of the idea that these two Defendants intend to enforce the Education Access Laws. *Id.* at fn. 1.[3] But Plaintiff's reliance on these statements is fundamentally flawed in two ways. First, the Complaint is silent as to any purported threats of enforcement by the Governor and the Attorney General, and Plaintiff cannot now rely on its Opposition's novel factual claims to cure that defect. *See, e.g.*, *Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1015 (N.D. Cal. 2024) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss").

Second, even if the Court considered these novel factual assertions (and it should not), they are irrelevant to the actual or threatened enforcement of the Education Access Laws—an essential

---

[3] Attempting to impute the Governor's statements to the Attorney General, Plaintiff contends that Defendants "make no distinction" between the Governor and the Attorney General. Opp. at 7. Not so. Defendants have laid out separate and distinct reasons as to why Plaintiff's allegations fail to establish standing as to each named Defendant. *See* Mot. at 8–9 (explaining why Plaintiff's general-duty allegations about the Attorney General are insufficient to establish standing as to that Defendant, and why Plaintiff's allegations as to the Governor's duties with the UC Regents or the CSU Trustees are insufficient to establish standing as to that Defendant).

element for traceability.[4] For example, Plaintiff cites a May 2021 article describing the Governor's demand for the UC and CSU systems not to raise in-state tuition fees for the 2021-22 school year, but this article makes no mention of the Education Access Laws. Opp. at 9-10, fn.1. Similarly, the Attorney General's statement about the educational rights of California students says nothing about the Education Access Laws or the enforcement thereof. *Id.* When suing a state official over the enforcement of a particular statute, traceability requires that the plaintiff show a causal connection between the state official's "actual or threatened enforcement" of the statute and the plaintiff's alleged injury. *California v. Texas*, 593 U.S. 659, 670 (2021) (emphasis omitted). Here, Plaintiff's cherry-picked news articles and statements about public education in California have no relation to the Education Access Laws, and they are insufficient to show any actual or threatened enforcement by the Governor or the Attorney General of the statutes at issue.

### 3. The Governor's appointment authority does not establish traceability.

Plaintiff's Opposition characterizes the Governor's appointment authority as tantamount to "[the] ability to exert immediate control over Board decisions on a statewide basis" and to "sustain a long-term impact on the direction of California's higher education system." Opp. at 10. This dubious theory of traceability is also legally incorrect.

To establish traceability based on a governor's appointment authority, a plaintiff must show its injuries flow from a specific appointment. *Tedards v. Ducey*, 951 F.3d 1041, 1068–69 (9th Cir. 2020) (no traceability where plaintiff failed to show they suffered an injury from the Arizona governor's temporary appointment of a particular senator). Here, Plaintiff alleges no injury from the Governor's appointment of particular members to the UC Regents or the CSU Trustees. Indeed, the alleged injury is from statutes enacted *by the Legislature* and implemented by the state's public higher education systems.

Further, while Plaintiff asserts the Governor can "exert immediate control" over these Boards through his appointment powers—and thereby enforce the Education Access Laws—this

---

[4] For this reason, permitting Plaintiff to amend its complaint to include these allegations would be futile to establish Plaintiff's claims against the Governor and Attorney General.

conclusory view lacks merit. Opp. at 10. As Plaintiff acknowledges, board members serve fixed multi-year terms and are not subject to gubernatorial control. *Id.* And individual appointees lack enforcement authority over the Education Access Laws; only the Boards acting collectively may implement residency rules. *See, e.g.*, Cal. Educ. Code § 66021.6(a).[5]

### B. Plaintiff Fails to Show that an Injunction Against the Governor or the Attorney General can Redress the Injuries it Alleges.

Plaintiff contends that "[j]ust as Plaintiffs [*sic*] injury is traceable to Defendants Newsom and Bonta, so too is that injury redressable by enjoining them." Opp. at 11. But when a plaintiff sues to challenge a state official's enforcement of a statute, redressability is not met if the plaintiff does not show the official can enforce that statute. *See, e.g.*, *California v. Texas*, 593 U.S. at 673 ("To find standing . . . to attack an unenforceable statutory provision would allow a federal court to issue what would amount to an advisory opinion without the possibility of any judicial relief.") (quotation omitted). Here, as discussed above, Plaintiff has not shown that the Governor or the Attorney General has enforcement authority over the challenged statute. Thus, Plaintiff fails to satisfy the redressability element of standing as to both of those Defendants.

Similarly, even if Plaintiff's contentions about the Governor's appointment authority were sufficient to establish traceability (and they are not), those contentions nonetheless fail to establish redressability. Under California law, the Governor does not have any authority to direct individual members of the UC Regents or CSU Trustees to act—or refrain from acting—in any particular manner. *See, e.g.*, Cal. Const. Art. IX, § 9(f) (establishing the UC system is "entirely independent of all political or sectarian influence … in the administration of its affairs"); Cal. Educ. Code § 66602(d)(2) (charging CSU Trustees members with "determining their own position on each issue rather than being bound to represent or advocate for the positions of a particular organization or constituency."). Thus, by virtue of having no authority over the discretion of individual members of the UC Regents or the CSU Trustees, the Governor cannot

---

[5] For the same reason, even as the President of the Board of Regents, the Governor cannot enforce the challenged statutes on his own. Only the Board acting collectively can do that.

implement the relief Plaintiff seeks: an order prohibiting Board members from "enforcing the challenged provisions." Compl. ¶ 80.

### C. Given the Other Defendants that Plaintiff has Sued, the Governor and the Attorney General Are Redundant Defendants.

Plaintiff has sued the State, the UC Regents, and the CSU Trustees—the entities with actual authority over tuition classification. As Plaintiff acknowledges, if it were to prevail against those defendants, any relief would bind state officials with implementation authority as a matter of law. As highlighted in Defendants' Motion, Mot. at 9, fn. 8, the Governor and the Attorney General are, therefore, redundant defendants and should be dismissed. *See, e.g.*, *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (finding the court may dismiss an officer as a redundant defendant when an official capacity suit is also filed against a government entity). Plaintiff effectively concedes this point by failing to address it in its Opposition. *See, e.g.*, *Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022).

## II. PLAINTIFF'S EXPRESS PREEMPTION CLAIMS FAIL

Plaintiff's theory is that attendance and graduation from California's schools are equivalent to, and a "proxy" for, residence under 8 U.S.C. § 1623. They are not. While many graduates of California high schools may, at some time, have had a "principal, actual dwelling place" in California, some will not. Further, some graduates of California high schools may currently have a "principal, actual dwelling place" in a state outside of California. Regardless of the location of their principal, actual dwelling place, if these students meet Section 68130.5's eligibility criteria, they are eligible for benefits under the Education Access Laws. The challenged regulation, therefore, "cannot be deemed to be based on residence for the simple reason that many *nonresidents* may qualify for it." *Martinez*, 50 Cal. 4th at 1290 (emphasis in original).

### A. "On the Basis of Residence" Under Section 1623(a) Has a Narrow, Defined Meaning.

Section 1623(a) prohibits states from offering postsecondary education benefits to undocumented immigrants "on the basis of residence" unless such a benefit is conferred on U.S. citizens without regard to their residence. The statute is clear in two respects, both of which lay

bare that Plaintiff failed to state a claim for express preemption.

First, precedent establishes that when a statute uses "on the basis of," the default interpretation is that the statute requires a showing of "'but-for' causation." *See, e.g.*, *Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir. 2019) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)); *Gentry v. East West Partners Club Management Co. Inc.*, 816 F.3d 228, 235-36 (4th Cir. 2016). Thus, Section 1623 only preempts state laws that make "residence" a but-for cause of eligibility for undocumented immigrants to receive postsecondary education benefits. Section 1623 does *not* preempt state laws where "residence" is *not* a but-for cause of eligibility for post-secondary education benefits that are only available to undocumented immigrants.

Plaintiff concedes that individuals who attended California high schools who never had a principal, actual dwelling place in California (and instead were and are residents of states such as Arizona, Nevada, and Oregon), are still eligible for benefits under the Education Access Laws. Opp. at 1, 13-14, 16. That concession alone defeats preemption. If individuals who were never California residents are eligible under the Education Access Laws, then by definition, "residence" cannot be the but-for cause of eligibility for benefits under those Laws.

Second, as noted, "residence" is statutorily defined as a "principal, actual dwelling place." 8 U.S.C. § 1101(a)(33). Because Section 1623 speaks in the present tense, its reference to a "principal, actual dwelling place" is a reference to a *present* "principal, actual dwelling place." *See* 8 U.S.C. § 1623(a) ("an alien who *is* not lawfully present" (emphasis added)); *id.* ("unless a citizen or national of the United States *is* eligible for such a benefit" (emphasis added)); *id.* ("without regard to whether the citizen or national *is* such a resident" (emphasis added)).

Plaintiff concedes that students who once had a "principal, actual dwelling place" in California but who are currently residents of another state are eligible under the Education Access Laws. Opp. at 20. Again, that concession defeats preemption. Section 1623 prohibits present-day residence from serving as the basis for eligibility for postsecondary education benefits—but the Education Access Laws make eligible for benefits those who are not presently residents as long as they meet other criteria not based on residence.

Plaintiff suggests that the nonresident students who qualify for the Education Access Laws

are "margin cases," *id*. at 14, and that only a "small number of U.S. citizens" qualify, *id.* at 20. However, the fact that those who qualify for benefits under the Education Access Laws may "often also be residents" does not somehow alter the legal definition of "residence," nor does it constitute "a de facto or surrogate residency requirement." *Martinez*, 50 Cal. 4th at 1291.

To avoid that glaring problem, Plaintiff seeks to impermissibly expand the definition of "residence" to include school attendance and graduation. *See, e.g.*, Opp. at 15. This interpretation, unmoored from the language of Section 1623, would inappropriately "add provisions to a federal statute," *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010), by loosening the meaning of "on the basis of" and inserting conditions beyond what is specified in the definition of residence provided in 8 U.S.C. § 1101(a)(33). Section 1623(a) does not speak of "proxies" for residence, nor factors correlated with residence, and it does not bar use of criteria that may include many residents. The Court must give effect to the statute as written. *Artis v. District of Columbia*, 583 U.S. 71, 83 n. 8 (2018); *see also Bates v. United States*, 522 U.S. 23, 29 (1997) (recognizing courts should generally not read words into a statute "that do not appear on its face").

Nor does the fact that state law requires high school attendance in the district of the "residency of either the parent or legal guardian," Cal. Educ. Code § 48200, make eligibility under the Education Access Laws turn "on the basis of residence." *See* Opp. at 16. State law also permits students in neighboring states or Baja California to attend California high schools. Cal. Educ. Code §§ 48050-48051. And although not addressed by state law, students who live outside California may attend California boarding schools. Mot. at 12; *see also Martinez*, 50 Cal. 4th at 1291. Thus, although there is some overlap between high school attendance and California residency, state law does not equate the two. Plaintiff is wrong that "California confers . . . eligibility based on residence." Opp. at 15. Eligibility is conferred based on past attendance and graduation, which under state law is simply not the same as residence under federal law.

If Congress had intended to prohibit states from granting postsecondary educational benefits based on criteria such as graduation and high school attendance, "it could easily have done so," *Martinez*, 50 Cal. 4th at 1291, but it chose not to. "Congress specifically referred to *residence* . . . as the prohibited basis for granting unlawful aliens a postsecondary education benefit." *Id*.

8

(emphasis in original). Accordingly, this Court should reject Plaintiff's attempt to impermissibly rewrite the plain terms of a statute into a broader prohibition than Congress itself crafted. *See, e.g.*, *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) ("This Court has no roving license . . . to disregard clear language simply on the view that . . . Congress 'must have intended' something broader."); *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) ("[I]t would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope.").

Finally, Plaintiff's opposition asserts that Section 1623 requires that *all* U.S. citizens (and not just a subset meeting the state's eligibility requirements) must be eligible for the benefits without regard to residency. Opp. at 19-20. As explained in Defendants' memorandum in support of their Motion to Dismiss, U.S. citizens are equally eligible for benefits under the Education Access Laws based on criteria other than their principal or actual dwelling place. Mot. at 15-16.

**B.    Plaintiff Cites No Case Law that Supports Its Reading of Section 1623.**

Faced with a straightforward question of statutory interpretation, Plaintiff argues that cases involving collusive[6] consent judgments support their expansive redefinition of "residence" under Section 1623. However, these cases are distinguishable and, therefore, do not support the assertion that "on the basis of residence" means the equivalent of "anything with any potential correlation with having lived in a state at some point." In *United States v. Texas*, 350 F.R.D. 74 (N.D. Tex. 2025), the challenged statute, titled "Determination of Resident Status," allowed individuals to establish residency benefits for individuals who:

> "(A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and *(B) maintained a residence continuously in this state for:* (i) the three years preceding the date of graduation or receipt

---

[6] The United States began its campaign against state tuition access laws by filing lawsuits against Texas and Oklahoma, who immediately declined to defend their laws, and those laws were enjoined via consent judgment. *Texas*, No. 7:25-cv-00055 (N.D. Tex. June 4, 2025) (order and final judgment declaring Texas law unconstitutional and permanently enjoining its enforcement); *Oklahoma*, No. 6:25-cv-00265 (E.D. Ok. Aug. 29, 2025) (order and final judgment declaring Oklahoma law unconstitutional and permanently enjoining its enforcement). Even if the statutes in those cases were similar to the ones in the case at bar, those cases are instances where the United States has "select[ed] as their defendants those individual officials they consider most sympathetic to their cause or most inclined to settle favorably and quickly." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191–92 (2022). Accordingly, these are best described as "hobbled litigation rather than a full and fair adversarial testing." *Id.* at 192.

of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education."

Tx. Educ. Code. § 54.052(a) (emphasis added). In addition to graduation, individuals must have resided in Texas for three years before graduation and during the year before enrolling in a postsecondary institution. The *Texas* court ultimately found the statute there was preempted because the challenged statute expressly granted in-state residents a benefit based on "residence." *Texas*, 350 F.R.D. at 81. As Plaintiff concedes, the statute challenged in *United States v. Oklahoma*, No. 6:25-cv-00265 (E.D. Ok. 2025), is similarly distinct from the California Education Access Laws because it "include[s] an explicit residence requirement." Opp. at 18. These Education Access Laws, by contrast, do not require students to reside in California. *See* Cal. Educ. Code § 68130.5.

Further, some of Plaintiff's citations are to consent judgments, which have no precedential authority and are entitled to no weight, as Defendants explained in their opening brief. Mot. at 14; *see* Opp. 18 (citing Texas and Oklahoma consent judgments). But even if Section 1623 preempts the Texas and Oklahoma statutes, such a conclusion would say nothing about laws like those of California that confer benefits without regard to residence.[7]

Because eligibility for benefits under the Education Access Laws is not "on the basis of residence," the Laws comply with the federal statute. *See Martinez*, 50 Cal. 4th at 1291 (finding Section 1623 did not govern the case because Section 68130.5 allowed undocumented students to qualify for the non-resident tuition waiver based on criteria other than residence).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Governor Newsom and Attorney General Bonta as Defendants, the Complaint should be dismissed with prejudice, and judgment should be entered for Defendants.

---

[7] Plaintiff's citation to *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585 (E.D. Va. 2004) is similarly unpersuasive. *See* Opp. at 19. The *Merten* court evaluated the legality of a state law that denied postsecondary access to undocumented students, and the question of what constituted "on the basis of residence" for purposes of Section 1623(a) was simply not before the Court. Accordingly, Plaintiff's cited parenthetical is dicta, and more importantly, clearly at odds with the plain text of Section 1623.

Dated: January 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
CHERYL L. FEINER
Senior Assistant Attorneys General
JOEL MARRERO
ROBIN L. GOLDFADEN
Supervising Deputy Attorneys General
CHRISTOPHER TENORIO
JOSÉ PABLO GALÁN DE LA CRUZ
JENNIFER SOLIMAN
Deputy Attorneys General


/s/ Nicholas Espíritu
NICHOLAS ESPÍRITU
Deputy Attorney General
*Attorneys for Defendants*